James D. JENNINGS, Appellant–
Plaintiff,

v.

ST. VINCENT HOSPITAL AND
HEALTH CARE CENTER,
Appellee–Defendant.

No. 49A05–0406–CV–327.

Court of Appeals of Indiana.

Aug. 17, 2005.

Rehearing Denied Nov. 1, 2005.

Nicholas C. Deets, Hovde Law Firm, Indianapolis, for Appellant.

Angela M. Smith, Hall, Render, Killian, Heath & Lyman, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Today, we are confronted with a seemingly unresolvable case. We take this opportunity, however, to point out a deficiency in our current system of worker's compensation. Hence, we begin our discussion with the following:

Because when the world starts to move from a primarily vertical (command and control) value-creation model to an increasingly horizontal (connect and collaborate) creation model, it doesn't affect just how business gets done. It affects everything—how communities and companies define themselves, where companies and communities stop and start, how individuals balance their different identities as consumers, employees, shareholders, and citizens, and what role government has to play. All of this is going to have to be sorted out anew.

Friedman, Thomas L., *The World is Flat—A Brief History of the Twenty-First Century* 201 (Farrar, Straus and Giroux 2005).

Appellant-defendant James D. Jennings appeals the trial court's order to dismiss his claim for negligence against appellee-defendant St. Vincent Hospital and Health Care Center, Inc. (St.Vincent). In particular, Jennings contends that the trial court erred in determining that Jennings was a co-employee of St. Vincent and StarMed Staffing Corporation (StarMed), consequently making him eligible for StarMed's worker's compensation but barring him from raising a civil claim for monetary damages against St. Vincent. Thus, Jennings argues that the trial court erred in determining that it lacked subject matter jurisdiction over his negligence claim against St. Vincent.

Although we conclude that the seven-factor analysis our Supreme Court established in *Hale v. Kemp*, 579 N.E.2d 63 (Ind.1991), supports the trial court's conclusion, we invite our General Assembly to review our current system of worker's compensation in light of the circumstances presented here.

## FACTS

Jennings is a registered nurse specializing in emergency room work since 1996. In 1999, he began employment with StarMed, located in Indianapolis, which made temporary assignments at hospitals and emergency rooms throughout the country.

StarMed entered into a Standard Form Staffing Agreement (Agreement) with St. Vincent in 1992. Pursuant to the Agreement, StarMed was to provide St. Vincent with registered nurse employees for temporary nurse staffing. Jennings was assigned to work in St. Vincent's emergency room under the terms of the Agreement for a thirteen-week period from December 11, 1999, to March 9, 2000. As for each assignment, Jennings executed a Candidate Assignment Agreement with StarMed, but he did not enter into any written employment agreement with St. Vincent. Moreover, he did not complete an employment application with St. Vincent.

Each nurse referred to St. Vincent under the Agreement had to meet St. Vincent's specifications. St. Vincent had the opportunity to conduct a telephonic interview with nurses who are referred to the hospital prior to the beginning of the assignment. Accordingly, Toni L. Herron, a registered nurse employed by St. Vincent, interviewed Jennings by telephone and approved his assignment. St. Vincent also reserved the right to dismiss, at its discretion, a nurse who performs the assignment in an "unsatisfactory manner." Appellant's App. p. 115.

The Agreement and the Candidate Assignment Agreement provided that StarMed was responsible for compensating the nurses referred to St. Vincent, "including payment of wages, tax withholdings, workers compensation, social security, any and all benefits related to employment, and other obligations imposed by federal, state, and local law." Appellant's App. p. 117. The payment was processed between St. Vincent and StarMed upon an invoice sent to St. Vincent by StarMed. Furthermore, StarMed was in charge of lodging and travel accommodations for each nurse, the worker's compensation insurance covering all of the nurses referred to St. Vincent, and the public liability insurance. StarMed also had to ensure that each nurse carried medical malpractice insurance.

Jennings completed all of his tax and employment forms for StarMed, and he was not eligible for any employment benefits available to St. Vincent employees. Prior to the assignment at St. Vincent, Jennings was not licensed as a nurse in the State of Indiana. Since St. Vincent required nurses to be licensed under the Agreement, Jennings obtained the license solely for the temporary assignment at St. Vincent.

The Agreement determined the status of the parties in establishing that StarMed would remain the employer of the nurses referred to St. Vincent. In paragraph 7.1, the Agreement provides:

> 7.1 *Status of the Parties.* In performing the services as contemplated hereunder, [St. Vincent] and [StarMed] agree that Nurses are acting as employees of [StarMed] and remain, for the duration of any assignment hereunder, employees of [StarMed] and shall not be considered agents or employees of [St. Vincent] for any definite duration. [StarMed] agrees to pay, as they become due, all federal and state income taxes, as well as other taxes, including employment taxes due and payable on the compensation earned by the Nurse and to indemnify and hold [St. Vincent] harmless from any and all taxes, penalties or interest which might arise by

Nurse's failure to do so. This provision shall survive the termination of this Agreement.

Appellant's App. p. 119 (emphasis in the original).

According to the terms of the Agreement, St. Vincent was required to provide Jennings with an orientation that was conducted by Herron upon Jennings's arrival at St. Vincent. The purposes of the orientation were to provide with all relevant hospital rules and regulations and to acquaint him with the nursing policies and procedures necessary to perform and document quality patient care. At some point, Herron informed Jennings of the location of the relevant rules and regulations so that Jennings could review them on his own. However, according to Jennings's affidavit, Jennings was not given any instructions regarding the care or treatment of patients. Therefore, Jennings performed his nursing duties according to his education, training, and experience, including that provided by StarMed at the beginning of his employment with StarMed.

Jennings was not required to use the time clock used by all St. Vincent employees to record his hours. Rather, he reported his hours on a StarMed time sheet, which he faxed to that company. The Agreement provided that St. Vincent had to guarantee a thirty-six or a thirty-seven and one-half hour week, but the shifts to which Jennings was assigned were established in the Candidate Assignment Agreement between Jennings and StarMed. However, according to the Agreement between St. Vincent and StarMed, the hospital set forth the start date, unit, and work schedule for each nurse accepted and was able to modify these assignments.

Jennings was required to supply his own nursing uniforms or "scrubs," and he was allowed to bring his personal stethoscope and trauma or bandage shears to work.

All other equipment, such as medical monitors, medications, and supplies, were provided by St. Vincent. The assignment was to be fulfilled at the premises and facilities of St. Vincent.

On March 7, 2000, during the course of Jennings's regular nursing duties in the emergency room at St. Vincent, Jennings's thumb was stuck with an angiocatheter—a medical device that is used to start an intravenous line in a patient. Jennings alleges that the needle was contaminated and infected him with the Hepatitis C virus. Therefore, he filed a worker's compensation claim with StarMed and its worker's compensation insurer, and the insurer paid for all medical expenses and worker's compensation benefits related to the incident. St. Vincent did not pay any worker's compensation benefits.

On November 16, 2001, Jennings filed a complaint against St. Vincent, alleging that his injury was caused by the negligence of a St. Vincent employee. In the complaint, Jennings alleged that he was an employee of StarMed at the time of the incident. The trial court determined after oral argument by counsel and without presentation at evidence, that Jennings was a co-employee of St. Vincent and StarMed when he was assigned to work at the hospital and granted St. Vincent's motion to dismiss Jennings's claim for lack of subject matter jurisdiction according to Indiana Trial Rule 12(B)(1). Jennings now appeals.

## DISCUSSION AND DECISION

Jennings argues that the trial court erred in granting St. Vincent's motion to dismiss Jennings's claim for lack of subject matter jurisdiction. Jennings contends that he was not an employee of St. Vincent at the time of the incident. Therefore, he asserts that he is not precluded by the exclusivity provision of the Indiana Work-

er's Compensation Act[1] (Act) from pursuing a civil claim for monetary damages against St. Vincent.

### I. Standard of Review

██ In addressing Jennings's allegation, we first note that the standard of review for a motion to dismiss for lack of subject matter jurisdiction is dependent upon what occurred in the trial court. *Argabright v. R.H. Marlin, Inc.*, 804 N.E.2d 1161, 1165 (Ind.Ct.App.2004) (citing *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind.2001)). Where, as here, the trial court rules on a paper record without conducting an evidentiary hearing, the standard of review is de novo. *Id.* Thus, no deference is afforded the trial court's factual findings or judgment because a court of review is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction" where the trial court did not engage in its classic fact-finding function to evaluate the character and credibility of witnesses. *GKN*, 744 N.E.2d at 401 (citing *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning*, 699 N.E.2d 306, 308 (Ind.Ct.App. 1998)).

██ Because the trial court relied solely on a paper record in this case, we will presume that the ruling of the trial court is correct. We will reverse on the basis of an incorrect factual finding only if the appellant persuades us that the balance of evidence is tipped against the trial court's findings. *Id.*

We note that the Act provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment. I.C. § 22–3–2–6. Although the Act bars a trial court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided that the third party is neither the plaintiff's employer nor a fellow employee. *GKN*, 744 N.E.2d at 402; I.C. § 22–3–2–13. Here, Jennings contends that he is entitled to recover from St. Vincent because he was not an employee of St. Vincent at the time his injury occurred. St. Vincent, on the other hand, argues that Jennings was a co-employee of St. Vincent and StarMed and thus barred from bringing a claim against St. Vincent.

██ The Act establishes that one worker may simultaneously have two employers. *See* I.C. § 22–3–3–31. Where two employers "so associate themselves together that both are in direct control of the employee and he is made accountable to both, he will be considered an employee of both employers...." *GKN*, 744 N.E.2d at 402 (citing *U.S. Metalsource Corp. v. Simpson*, 649 N.E.2d 682, 685 (Ind.Ct.App. 1995)). Determining whether an employer-employee relationship exists and thus whether the exclusivity provision of Indiana Code section 22–3–2–6 applies is ultimately a question of fact. *GKN*, 744 N.E.2d at 402. In making this determination, the factfinder must weigh a number of factors, none of which is dispositive. *Id.*

In *GKN*, a truck driver was employed by a trucking company and assigned to work for a general contractor on a highway project. The court had to determine whether the driver was a co-employee of the trucking company and the general contractor or an employee of the trucking company and an independent contractor of the general contractor. In order to determine this dual-employment issue, our Supreme Court used the factors that have to be weighed against each other as established in *Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind.1991):(1) the right to discharge; (2)

---

**1.** Ind.Code § 22–3–2–6.

mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries. These factors must be weighed against each other as part of a balancing test as opposed to a mathematical formula where the majority wins. *GKN*, 744 N.E.2d at 402.

## II. Burden of Proof

■ When challenging the trial court's subject matter jurisdiction, the employer bears the burden of establishing the lack of jurisdiction, unless the plaintiff's own complaint demonstrates facts establishing the employment relationship. *Id.* at 404. Here, Jennings's complaint did not set forth facts that clearly proved the existence of an employer-employee relationship with respect to either St. Vincent. To the contrary, Jennings cited the Agreement's provision stating that Jennings should be considered an employee of StarMed. Appellant's Br. p. 15–16. However, the parties do not dispute that Jennings was an employee of StarMed when he was stuck by the needle, but they do dispute whether he was also a St. Vincent employee. Therefore, we proceed to the seven-factor test established in *Hale* to determine whether St. Vincent met its burden of proof in demonstrating that the trial court lacked subject matter jurisdiction over Jennings's cause of action against it.

## III. Examination of the Factors Established in Hale v. Kemp

### 1. Right to Discharge

■ According to the terms of the Agreement, St. Vincent had the right to (1) approve Jennings's assignment to St. Vincent, Appellant's App. p. 116, (2) monitor Jennings's performance of his duties dur-

ing the assignment, Appellant's App. p. 115–16, and (3) dismiss nurses from an assignment for unsatisfactory performance, Appellant's App. p. 115. St. Vincent only reserved the indirect right to discharge Jennings from his assignment at St. Vincent because St. Vincent could not terminate Jennings's employment with StarMed. But our Supreme Court has recognized such indirect right to discharge, *Degussa v. Mullens*, 744 N.E.2d 407, 413 (Ind.2001), and, therefore, this factor weighs in favor of the conclusion that Jennings was a co-employee of St. Vincent and StarMed.

### 2. Mode of Payment

■ As set forth in the Agreement, Jennings was paid exclusively by StarMed, where he presented his time sheet. Appellant's App. p. 117, 126. StarMed was also responsible for tax withholdings, worker's compensation, social security, all other benefits related to employment, and other obligations imposed by federal, state, and local law. Appellant's App. p. 117. This factor weighs against the conclusion that Jennings was a co-employee of St. Vincent and StarMed. We note, however, that in a dual-employment context, the mode of payment can never be determinative because only one of the employers is generally responsible for compensation.

### 3. Supplying Tools or Equipment

■ Jennings was required to obtain an Indiana nursing license and to provide his own uniform. He was allowed to bring his own stethoscope and trauma shears. Appellant's App. p. 90. All other medical equipment, supplies, medications, and utilities, as well as the facilities, were supplied by St. Vincent. Appellant's App. p. 90.

The fact that Jennings was working on the premises of St. Vincent for the benefit of St. Vincent's patients standing alone

does not allow us to conclude that this factor weighs in favor of St. Vincent. In our view, it is axiomatic that a nurse who is working for a hospital works on its premises, in its facilities, and with its patients. Jennings only had to supply his uniform, while the majority of tools and equipment were provided by St. Vincent. Therefore, this factor weighs in favor of the conclusion that Jennings was a co-employee of St. Vincent and StarMed.

### 4. Belief of the Parties in the Existence of an Employer–Employee Relationship

We have previously held that the belief of the parties in the existence of an employer-employee relationship can often best be determined by the terms of the contract. *Nowicki v. Cannon Steel Erection Co.*, 711 N.E.2d 536, 541 (Ind.Ct.App. 1999), *trans. denied.* Here, the Agreement clearly provided that Jennings was to remain an employee of StarMed:

> 7.1 *Status of the Parties.* In performing the services as contemplated hereunder, [St. Vincent] and [StarMed] agree that Nurses are acting as employees of [StarMed] and remain, for the duration of any assignment hereunder, employees of [StarMed] and shall not be considered agents or employees of [St. Vincent] for any definite duration. [StarMed] agrees to pay, as they become due, all federal and state income taxes, as well as other taxes, including employment taxes due and payable on the compensation earned by the Nurse and to indemnify and hold [St. Vincent] harmless from any and all taxes, penalties or interest which might arise by Nurse's failure to do so. This provision shall survive the termination of this Agreement.

Appellant's App. p. 119 (emphasis in the original).

Jennings stated in his affidavit, "I believed and understood that I was an employee of StarMed and that I was an independent contractor and not an 'employee' of St. Vincent's during the St. Vincent's assignment." Appellant's App. p. 126. There is no evidence that St. Vincent believed Jennings was its employee. To the contrary, the record shows that Jennings was treated differently than regular St. Vincent nurses: his compensation, including taxes and employment benefits, was handled by StarMed, he was not eligible for employment benefits from St. Vincent, he was not allowed to use the St. Vincent time clock and had to fill out StarMed time sheets, and he was never asked to complete an application or any other employment related document for St. Vincent. Therefore, this fact weighs heavily against the conclusion that Jennings was a co-employee of St. Vincent and StarMed.

### 5. Control over the Means Used in the Results Reached

Our Supreme Court has held that, although not dispositive, control is the most important factor when determining whether an employer-employee relationship exists. *GKN*, 744 N.E.2d at 405–06. The Agreement provided that each nurse was required to meet St. Vincent's specifications and that St. Vincent had the right to conduct a telephonic interview with each nurse referred to the hospital prior to the assignment. Appellant's App. p. 116. Furthermore, St. Vincent had the right to dismiss Jennings for unsatisfactory performance. Appellant's App. p. 115. However, these facts do not yet allow the conclusion that St. Vincent had control over how Jennings fulfilled his duties as a nurse, because the rights to interview a potential candidate and to dismiss a worker upon unsatisfactory performance also exist in an independent contractor relationship.

Pursuant to the Agreement, St. Vincent could dictate the start date, unit, and work schedule for each nurse and was able to modify these assignments. St. Vincent also agreed to acquaint Jennings with the "nursing policies and procedures necessary to perform and document quality patient care," Appellant's App. p. 116, implying that Jennings was required to follow these policies.

However, Jennings stated in his affidavit that he performed his nursing duties in accordance with his education, training, and experience, as well StarMed's policies and procedures regarding patient evaluation and treatment, which Jennings had to follow during each of his assignments. Appellant's App. p. 127–28. Jennings argues that under 410 IAC 15–1.1–19, he may assess and treat patients, subject only to certain circumstances where nurses must practice under the orders of a physician. Appellant's Br. p. 17. In his affidavit, Jennings stated that he received instructions only from emergency room physicians who were independent contractors and not employees of St. Vincent. Appellant's App. p. 128. Furthermore, Jennings directs us to *Moberly v. Day,* 757 N.E.2d 1007, 1010–11 (Ind.2001), which, according to Jennings, stands for the proposition that where the plaintiff is engaged in a profession or skilled occupation, it is less likely that he is controlled to the degree necessary to create an employer-employee relationship. Appellant's Br. p. 18. For these reasons, Jennings asserts that there was no control on the part of St. Vincent over his work.

In addressing these arguments, we first note that 410 IAC 15–1.1–19 defines a "registered nurse" as an individual licensed under Indiana Code 25–23–1. Nowhere does it refer to the duties of a registered nurse. Furthermore, *Moberly* does not establish a general rule that someone who is engaged in a skilled occu-

pation is more likely to be an independent contractor than a dual employee. Rather, the facts in *Moberly* are distinct from the circumstances here. In *Moberly,* the alleged second employer did not specifically tell his employees what to do, but "left that up to them." *Moberly,* 757 N.E.2d at 1011. Jennings, however, had to follow the instructions of physicians. Appellant's App. p. 128. The fact that these physicians may have been independent contractors makes no difference, inasmuch as they were acting on behalf of St. Vincent when instructing Jennings.

In light of the foregoing reasons, we conclude that St. Vincent had control over the means that Jennings used to assess and treat patients and that this factor, therefore, weighs in favor of the conclusion that Jennings was a co-employee of St. Vincent and StarMed.

### 6. *Length of Employment*

■■■ With regard to this factor, we first observe that the greater the length of employment, the more indicative it is of an employer-employee relationship. *GKN,* 744 N.E.2d at 406 (citing Restatement (Second) of Agency § 220(2) cmt. j). Although the Agreement stated that each nurse would be referred to St. Vincent for "a minimum of thirteen weeks," Appellant's App. p. 115, the Candidate Assignment Agreement between StarMed and Jennings established that the duration of the assignment was only thirteen weeks. It did not indicate that the assignment could be prolonged by St. Vincent. Therefore, this factor weighs against the conclusion that Jennings was a co-employee of St. Vincent and StarMed.

### 7. *Establishment of Work Boundaries*

■■ The precise meaning of "work boundaries" is not clear, but our case law indicates that this factor primarily impli-

cates spatial boundaries, while temporal and other boundaries might be analyzed more appropriately under the control factor. *Degussa,* 744 N.E.2d at 414; *Nowicki,* 711 N.E.2d at 544. As we found above, the establishment of work boundaries related to the applicable nursing policies, working times, and shifts is controlled by St. Vincent.

The spatial boundaries are mandated by Jennings's assignment to work as an emergency room nurse. Unlike nurses providing home care for patients, an emergency room nurse has to be in the emergency room, and thus on the premises of the hospital, to perform his duties. As we have previously determined, "if rules are made only for general policing of the premises, mere conformity to such regulations does not indicate that the workmen are servants of the person making the rules." *Nowicki,* 711 N.E.2d at 544 n. 8. Thus, the fact that St. Vincent had control over the shift and the hospital department to which Jennings was assigned does not weigh in favor of the conclusion that Jennings was a co-employee of St. Vincent and StarMed. Rather, this fact is neutral on the issue.

■ Balancing the seven *Hale* factors and giving considerable weight to the element of control, we find that the test leads us to conclude that Jennings was a co-employee of St. Vincent and StarMed. Not only did St. Vincent have control over Jennings's performance of his duties, but it also had a right to dismiss Jennings from his position, and it supplied the tools and equipment that Jennings needed to perform his duties. The only factors weighing in favor of StarMed are the belief of the parties that no employment relationship existed between Jennings and St. Vincent, the length of the employment and the method of payment. As we noted above, the method of payment is not significant in a dual-employment context; thus, only two of the seven factors weigh significantly against the conclusion that Jennings was a co-employee of St. Vincent and StarMed. Therefore, we conclude that St. Vincent met its burden of proof establishing that an employer-employee relationship existed, and the trial court did not err on this basis.

### IV. Estoppel

■ Jennings further argues that St. Vincent should be estopped from claiming that Jennings's exclusive remedy is the Worker's Compensation Act because the Agreement explicitly provided that Jennings would remain an employee of StarMed.

In support of this argument, Jennings directs us to *McQuade v. Draw Tite, Inc.,* 659 N.E.2d 1016, 1020 (Ind.1995), where our Supreme Court held that there is "little likelihood that equity will ever require us to pierce the corporate veil to protect the same party that erected it." *McQuade* has to be distinguished from the circumstances here, however, because it dealt with the issue of whether the exclusivity provision of the Act prevents an employee from suing her employer's parent corporation for injuries sustained in the course of employment and not with a dual-employment issue.

Jennings also cites *Garrigus v. Kerns,* 178 N.E.2d 212, 134 Ind.App. 240 (Ind.Ct. App.1961), and *Riverview Health Care v. Wright,* 524 N.E.2d 321 (Ind.Ct.App.1988), both dealing with estoppel. Again, both cases are distinguishable from what we have here. In *Garrigus,* the defendant was estopped from claiming that the plaintiff was an independent contractor because it had previously been successful in obtaining a dismissal of plaintiff's civil suit on the basis that he was an employee. In *Wright,* a worker was held to be estopped from asserting a worker's compensation

claim after he had prevailed on a motion to dismiss on the exclusive remedy issue before the trial court. In both cases, the estopped party had prevailed in a court action that decided whether an employer-employee relationship existed at all, whereas this case deals with a clause in a contract between the two possible employers.

That said, the cases that Jennings points to are not sufficient to support his argument that St. Vincent should be estopped from claiming that Jennings's exclusive remedy is the Act in light of the Agreement between StarMed and St. Vincent.

## CONCLUSION

From the foregoing discussion, we conclude that the trial court did not err in dismissing Jennings's claim against St. Vincent for lack of subject matter jurisdiction. However, as we suggested at the outset, there is a need for the legislature to act. In Friedman's words,

> [t]he whole mind-set of a flat world is one in which the individual worker is going to become more and more responsible for managing his or her own career, risks, and economic security, and the job of government and business is to help worker build the necessary muscles to do that. The "muscles" workers need most are portable benefits and opportunities for lifelong learning. Why those two? Because they are the most important assets in making a worker mobile and adaptable.... Creating legal and institutional frameworks for universal portability of pensions and health care—in addition to Social Security, Medicare, and Medicaid—will help people build up such muscles.

Friedman, *supra*, at 284–85. Our legislatures indeed have acted when they provided Social Security, Medicare, and Medicaid, as well as worker's compensation; however, since the world does not stand

still, the law cannot stand still either. The laws must certainly be adapted to the circumstances of our times when workers are mobile and oftentimes employed only temporarily or by multiple employers.

While the worker's compensation scheme fulfills many needs, the rates employers pay (when they are not otherwise self-insured) will be materially affected by the safety of the workplace they provide to their "employees." Here, we have an employer without a "workplace" and one with. The one with the workplace is shielded from traditional tort liability because it qualifies as a "co-employer." The entire scheme should be reviewed by our General Assembly in light of our ever shrinking and "flat" world.

The trial court applied the *Hale* test we presently use correctly and is therefore affirmed.

KIRSCH, C.J., concurs.

BARNES, J., dissents with opinion.

BARNES, Judge, dissenting.

I respectfully dissent. I recognize that the majority has reviewed the seven-factor test recited in *Hale* in reaching its conclusion. Although I also follow that template, I do not agree that Jennings was a "co-employee" of St. Vincent and StarMed at the time of his injury.

As one steps back and inspects the facts here it is apparent that for a variety of reasons, mostly economic one would presume, St. Vincent had chosen to contract with StarMed for the professional services of Jennings. Jennings was paid only by StarMed, wore his own uniform and brought his own stethoscope and trauma shears to work and, because he was a nurse, of course he otherwise used St. Vincent's "equipment." He could hardly be expected to drag his own x-ray machine to work, nor to supply his own medi-

cations, needles, and other disposable items that are a nurse's stock-in-trade.

In addition, the contract that StarMed and St. Vincent signed clearly, unambiguously, and directly denominates Jennings as StarMed's employee and only StarMed's employee. It is clear to me that St. Vincent did not believe Jennings was its employee nor did it want Jennings to be its employee, at least until such time as it became legally convenient in the present lawsuit for Jennings to be its employee. Jennings was not eligible for St. Vincent employment benefits, did not fill out an employment form for the hospital, and did not punch the St. Vincent time clock. St. Vincent did apparently retain the right to dismiss Jennings, provided it first notified StarMed of its intent to do so. This should be given minimal weight as an indicator that Jennings was St. Vincent's employee. It is hard to imagine an independent contractor arrangement that would not allow the hiring company to discharge the worker if it was unsatisfied with him or her. *See Nowicki v. Cannon Steel Erection Co.*, 711 N.E.2d 536, 545 (Ind.Ct.App. 1999) (Kirsch, J., dissenting), *trans. denied.* In sum, I agree with the Mississippi Supreme Court when it said, "neither of the parties should be permitted to dispute a contractually-created independent contractor relationship between them when to do so adversely affects an injured third party." *Richardson v. APAC–Mississippi, Inc.*, 631 So.2d 143, 150 (Miss.1994). Allowing St. Vincent to disavow its previous designation of Jennings as an independent contractor adversely affects Jennings.

Although I agree with the majority that "control" over a worker is an important aspect of this equation, I disagree that the facts presented in this case mandate the result the majority reaches. Certainly Jennings, as a nurse, followed orders given to him by the physicians at the hospital, as any nurse would and should. The record, however, indicates that these physicians were themselves independent contractors and not employees of the hospital. This makes it even more problematic to come to the conclusion that co-employee status for Jennings should be inferred. The majority responds to this concern by asserting, "that these physicians may have been independent contractors makes no difference, inasmuch as they were acting on behalf of St. Vincent when instructing Jennings." Slip op. p. 14. I would assume St. Vincent would disagree vehemently with this statement were it the defendant in a medical malpractice suit alleging negligence on the part of an independent contractor physician working at the hospital. Indeed, the law would be with St. Vincent that it would not be responsible for the acts of an independent contractor physician, provided it gave written notice to its patients at the time of admission that the physicians were independent contractors and not employees of the hospital. *See Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 152 (Ind. 1999).

Likewise, the length of employment criterion militates against the majority's finding, in my view. There was a finite time, defined by a clear and unambiguous contract for a specific task. That, to me, is a straightforward indicator of independent contractor status for Jennings.

Although the majority concedes that the definition of "work boundaries" is not clear, I do not give this much weight at all because of the nature and gist of the agreement between StarMed and St. Vincent. That document called for a nurse to work in the St. Vincent emergency room. We should not be taken aback or surprised when that area of the hospital is the "boundary" that is used by Jennings. He certainly could not ply his professional trade anywhere else or he would be outside the parameters of the contract be-

tween St. Vincent and StarMed. It was the contract that defined Jennings' physical "work boundaries," not St. Vincent. The contract was also highly specific as to how many hours per week Jennings could work and when he was entitled to time off. St. Vincent had control over when those hours would be assigned, but none over the amount of hours.

The fact is that St. Vincent entered into this business arrangement because it believed it was one that was beneficial and shielded it from various liabilities. Fair enough. I do not believe that an entity such as St. Vincent should be permitted to use this decision to enter into this agreement with StarMed as both a sword and a shield. Judge Kirsch aptly stated a few years ago that the purpose of the Worker's Compensation Act is "not to immunize third-party tort feasors and their liability insurers from liability for negligence which results in serious injuries to one who is not in their employ." *Nowicki*, 711 N.E.2d at 544 (Kirsch, J., dissenting). Additionally, I keep in mind that "the remedies provided in the Worker's Compensation Act are in derogation of common law, ... and a statute that is in derogation of common law must be strictly construed against limitations on a claimant's right to bring suit." *McQuade v. Draw Tite, Inc.*, 659 N.E.2d 1016, 1018 (Ind.1995). Any doubts about the application of the Act must be resolved in favor of the injured party. *See id.* (quoting *Stump v. Commercial Union*, 601 N.E.2d 327, 331–32 (Ind.1992)). Although the facts here seem to make this a relatively close call, further scrutiny, in my opinion, reveals that we should err, if at all, on the side of the suing claimant—Jennings.

The majority and I are on the same page that the mode of payment and length of employment factors of the *Hale* test clearly weigh against finding co-employee status for Jennings. I think we also are in

agreement that the "work boundaries" factor is, at best, neutral in this case. The majority also recognizes that the belief of the parties factor weighs against finding co-employee status, but I would place much more emphasis on this factor than the majority does, given the plain and unambiguous language of the contract between St. Vincent and StarMed. I concede that St. Vincent had an indirect right to discharge Jennings but give this factor only minimal weight. I disagree that the "supplying tools or equipment" factor clearly weighs in favor of finding co-employee status and conclude it is at most a neutral consideration, given the nature of the "tools or equipment" a nurse uses in his or her work. I also disagree that the control factor indicates co-employee status, given that Jennings was directed in his day-to-day activities by doctors who themselves were independent contractors, not employees of St. Vincent. I would find, after weighing the seven *Hale* factors, that Jennings was not a "co-employee" of St. Vincent and StarMed.

I vote to reverse the trial court and to reinstate the complaint.