**WISHARD MEMORIAL HOSPITAL,**
Appellant–Defendant,

v.

**Jenny KERR, Appellee–Plaintiff.**

**No. 49A02–0508–CV–793.**

Court of Appeals of Indiana.

May 10, 2006.

◈⇒2161

Mary M. Ruth Feldhake, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds, LLP, Indianapolis, IN, Attorneys for Appellant.

Lee F. Baker, Nunn Law Office, Bloomington, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Wishard Memorial Hospital ("Wishard") appeals the trial court's denial of its motion to dismiss Jenny Kerr's complaint, which alleged negligence on Wishard's part and sought personal injury damages. We affirm.

### Issue

The sole issue is whether the trial court properly concluded that Wishard did not employ Kerr at the time of her injury and, therefore, the Worker's Compensation Act ("the Act") did not bar her from bringing this cause of action against Wishard.

### Facts

Kerr is a registered nurse ("RN") who was directly employed by CareStaff, Inc., which is a temporary staffing agency for nurses. On September 12, 2002, CareStaff executed an agreement with Wishard for Kerr to work at Wishard, beginning on

September 16 and ending October 12, 2002. The agreement listed the specific dates and times that Kerr was expected to work and referred to Kerr as a "CS Employee." App. p. 51. Kerr was assigned to work in Wishard's psychiatric emergency room ("ER").

On October 1, 2002, Kerr was departing Wishard after completing a shift when she slipped and fell on a freshly waxed floor, resulting in injuries. Kerr applied for and received worker's compensation benefits from CareStaff's insurer. She also filed a complaint sounding in negligence against Wishard; the complaint gave no indication that Kerr was an employee of Wishard.

Wishard moved to dismiss the complaint for lack of subject matter jurisdiction, alleging that Kerr's cause of action was barred by the exclusivity provision of the Act because Wishard was Kerr's employer. Ruling on a paper record, the trial court denied Wishard's motion to dismiss. The trial court certified this ruling for interlocutory appeal and we have agreed to accept jurisdiction.

### Analysis

A defense against an employee's negligence claim on the basis that the employee's exclusive remedy is to pursue a claim for benefits under the Act is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support." *Id.* The trial court may weigh the evidence to resolve the jurisdictional issue. *Id.*

The standard of appellate review for Trial Rule 12(B)(1) motions to dismiss is dependent upon what occurred in the trial court, that is: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." *Id.* at 401. Here, the trial court ruled entirely on a "paper record." "We review de novo a trial court's ruling on a motion to dismiss where the facts before the trial court are disputed and the trial court rules on a paper record." *Id.* Additionally, the parties disagree on some of the facts and, just as important, on some of the inferences arising from the facts. In this type of situation, we will affirm the judgment of the trial court on any legal theory supported by the evidence. *Id.* "However, the ruling of the trial court is presumptively correct, and we will reverse on the basis of an incorrect factual finding only if the appellant persuades us that the balance of evidence is tipped against the trial court's findings." *Id.*

The Act "provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment." *Id.* at 401–02 (citing Ind.Code § 22–3–2–6). The Act also provides that one worker may simultaneously have two employers. *Id.* at 402 (citing I.C. § 22–3–3–31).

To determine if an employer-employee relationship exists which may subject an employee to the Worker's Compensation Act so as to bar his common law claim against the special employer to whom he was "loaned," the following factors have been enumerated: (1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries.

*Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind. 1991). "Determining whether an employer-employee relationship exists ultimately is a question of fact." *GKN*, 744 N.E.2d at 402. The *Hale* factors "must be weighed against each other as a part of a balancing test as opposed to a mathematical formula where the majority wins." *Id.*

■ "[W]hen challenging the trial court's jurisdiction, the employer bears the burden of proving that the employee's claim falls within the scope of the Act unless the employee's complaint demonstrates the existence of an employment relationship." *Id.* at 404. Kerr's complaint did not demonstrate the existence of an employment relationship with Wishard. Therefore, Wishard bore the burden of demonstrating a lack of subject matter jurisdiction based on its claim that Kerr was its employee and her exclusive remedy fell under the Act. *See id.*

We note that "dual employment" issues in the worker's compensation context have had a tendency to generate fractured rulings from Indiana's courts. The ad hoc balancing of seven different factors does not seem to lead to predictable results in these types of cases. Here, for example, the Marion County Superior Court found there was no dual employment. In a different case with very similar facts, the same court (though a different judge) found that there was dual employment and dismissed a complaint; that result was affirmed by this court on appeal in a 2–1 decision, and our supreme court denied transfer with one justice not participating and one justice dissenting from the denial of transfer. *Jennings v. St. Vincent Hosp. & Health Care Ctr.*, 832 N.E.2d 1044 (Ind. Ct.App.2005), *trans. denied.*[1] *See also, e.g., GKN v. Magness*, 744 N.E.2d 397 (Ind.2001) (trial court denied motion to dismiss, this court reversed, our supreme court affirmed the trial court); *Degussa Corp. v. Mullens*, 744 N.E.2d 407 (Ind. 2001) (trial court denied motion to dismiss, our supreme court affirmed the trial court as result of 2–2 vote on the merits); *Nowicki v. Cannon Steel Erection Co.*, 711 N.E.2d 536 (Ind.Ct.App.1999), *trans. denied* (trial court granted motion to dismiss, this court affirmed on a 2–1 vote, our supreme court denied transfer on a 3–2 vote, but the dissent later was quoted with approval in *GKN*); *Turner v. Richmond Power & Light Co.*, 756 N.E.2d 547 (Ind. Ct.App.2001), *trans. denied* (trial court granted motion to dismiss, this court reversed on a 2–1 vote, our supreme court denied transfer on a 3–2 vote).

### A. Right to Discharge

Here, Wishard could not seek directly to have Kerr fired from her employment with CareStaff. However, Wishard did reserve the right to contact CareStaff if it was unsatisfied with Kerr's job performance and to advise that it did not want Kerr to return to the hospital. Our courts have held that this so-called "indirect" right to discharge weighs in favor of finding dual employment. *See Degussa*, 744 N.E.2d at 413 (citing *U.S. Metalsource Corp. v. Simpson*, 649 N.E.2d 682, 685 (Ind.Ct.App. 1995)).

1.  Cases appealed to this court are assigned to the judges and senior judges on a purely random basis. As a matter of pure happenstance, this case has been assigned to the judge who dissented in *Jennings*. We also note that our supreme court's denial of transfer in *Jennings* has no precedential value or legal effect, other than to terminate the litigation between the parties, and does not necessarily indicate agreement with the majority opinion. *See* Ind. Appellate Rule 58(B); *Journal–Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 481 n. 7 (Ind.1999). *See also Ludy v. State*, 784 N.E.2d 459, 460 (Ind.2003) (adopting new rule of law by 5–0 vote one year after transfer had been denied in a case presenting precisely the same argument, *Carie v. State*, 761 N.E.2d 385 (Ind.2002)).

It has also been observed, "It is hard to imagine an independent contractor arrangement that would not allow the hiring company to discharge the worker if it was unsatisfied with him or her." *Jennings*, 832 N.E.2d at 1056 (Barnes, J., dissenting) (citing *Nowicki*, 711 N.E.2d at 545 (Kirsch, J., dissenting)). Indeed, in reviewing the multitude of cases on the issue of dual employment, we have been unable to find a single case in which an entity "borrowing" a worker from another entity did not have the "indirect" right to discharge the worker if the worker was unsatisfactory. Thus, although we are required to conclude here that the "right to discharge" factor weighs in favor of finding dual employment, we give this factor, at most, minimal weight.

### B. Mode of Payment

Kerr was not paid directly by Wishard and did not receive any Wishard employee benefits. Kerr filled out CareStaff time sheets, which would be signed by a Wishard employee, Wishard would pay CareStaff for Kerr's services, and CareStaff in turn would pay Kerr after withholding taxes. The "mode of payment" factor weighs against a finding of dual employment. *See Jennings*, 832 N.E.2d at 1051.

In contrast to the "right to discharge" factor, the "mode of payment" factor in these types of cases almost always seems to favor not finding dual employment. That is, it appears to be standard operating procedure that the entity "borrowing" a worker almost never pays the worker directly, but instead pays the worker's direct employer, who in turn pays the employee, withholds taxes, and offers benefits (if any). Like the "right to discharge" factor, we believe the "mode of payment" factor is entitled to little weight in helping determine whether Kerr was a co-employee of both Wishard and CareStaff.

### C. Supplying Tools and Equipment

The only evidence in the record here is that Wishard provided Kerr with all of the nursing and medical supplies she needed to perform her job. There is no evidence as to whether she provided her own scrubs or uniform. With respect to things such as needles, intravenous fluids, and diagnostic equipment, it is difficult to conceive that a nurse, as opposed to the hospital where he or she was working, would provide such materials. *See Jennings*, 832 N.E.2d at 1055–56 (Barnes, J., dissenting) (stating that a nurse "could hardly be expected to drag his own x-ray machine to work, nor to supply his own medications, needles, and other disposable items that are a nurse's stock-in-trade."). Nonetheless, we must conclude that this factor weighs, slightly, in our view, in favor of finding dual employment of Kerr by both Wishard and CareStaff.

### D. Belief of the Parties

Here, there is conflicting evidence on whether Kerr and Wishard viewed her as a Wishard employee. On the one hand, Wishard nurse supervisor Holly Stanbrough stated in an affidavit, "I considered Jenny Kerr as an employee in that I had the same expectations for Jenny Kerr and had the same control over Jenny Kerr's work while she was at Wishard as I did any employee that receives a paycheck directly from Wishard." App. p. 46. On the other hand, there is no evidence Kerr ever filled out an employment application with Wishard, or that she was eligible for benefits provided to Wishard employees; also, Kerr was not permitted to park in the Wishard employee parking lot. Additionally, Stanbrough's statement that she considered Kerr an employee is not dispositive on the legal question of whether Wishard considered her an employee.

The "Staffing Agreement" executed by Wishard and CareStaff denominated

Kerr as a "CS Employee." App. p. 51. This contract is not as detailed as the contract we considered in *Jennings,* which clearly stated that nurses assigned to work at St. Vincent Hospital by the temporary staffing agency were solely employees of the staffing agency "and shall not be considered agents or employees of [St. Vincent] for any definite duration." *Jennings,* 832 N.E.2d at 1052. Nevertheless, "the belief of the parties in the existence of an employer-employee relationship can often best be determined by the terms of the contract." *Degussa,* 744 N.E.2d at 413. The contract clearly states that Kerr is CareStaff's employee. There is no indication that at the time the contract was entered into, Wishard and CareStaff intended for there to be a dual employment situation. Parties should not be able to lightly discard contractually-created relationships simply because it has become convenient to do so, especially where doing so is to the detriment of an injured party. *See Jennings,* 832 N.E.2d at 1056 (Barnes, J., dissenting) (quoting *Richardson v. APAC–Mississippi, Inc.,* 631 So.2d 143, 150 (Miss.1994)). We conclude that this factor weighs slightly against a finding of dual employment.

### E. Control

■■ "[A]lthough not dispositive, the right to control the manner and means by which the work is to be accomplished is the single most important factor in determining the existence of an employer-employee relationship." *GKN,* 744 N.E.2d at 403. "In contrast to employees, generally 'an independent contractor controls the method and details of his task and is answerable to the principal as to results only.'" *Mortgage Consultants, Inc. v.*

*Mahaney,* 655 N.E.2d 493, 495 (Ind.1995) (quoting *Detrick v. Midwest Pipe & Steel, Inc.,* 598 N.E.2d 1074, 1077 (Ind.Ct.App. 1992)). Here, the "work to be accomplished" was the care of patients at Wishard. As with many of the factors in this case, there is conflicting evidence, and conflicting inferences from the evidence, regarding the degree of control Wishard had over Kerr.

■ Stanbrough stated in her affidavit, "Jenny Kerr was required to follow Wishard policies and procedures for patient care and methods to complete her work. Wishard controlled the jobs to which Jenny Kerr was assigned and Jenny Kerr was answerable at all times to Wishard for all parts of her patient care at Wishard." App. p. 46. Essentially, Kerr responds to these statements by noting that as an RN, she is a trained professional who is held to a high standard of job performance, regardless of Wishard's policies and expectations. "A nurse, even one working under standing orders or a protocol established by a physician, 'must meet the standard of care to which nurses practicing that profession in the community are held.'" *Planned Parenthood of Northwest Indiana, Inc. v. Vines,* 543 N.E.2d 654, 660 (Ind.Ct.App.1989), *trans. denied* (quoting *Cooper v. National Motor Bearing Co.,* 136 Cal.App.2d 229, 288 P.2d 581, 587 (1955)). Kerr also is subject to investigation and discipline by the State if she fails to perform her duties adequately. *See* I.C. ch. 25–1–7. It is logical that the more skill and training required of a particular profession, the less ability that an entity hiring someone in that profession would have to "control" the particular details of how that person performs his or her duties.[2]

**2.** Wishard asserts that "[t]oo many professionals would be negatively impacted" by a holding that they are subjected to less control by an employer than less skilled workers because that might cause them to be excluded from *any* coverage under the Act for work-

In this sense, Kerr is unlike the blue-collar workers who often have been at the center of worker's compensation dual employment cases. *See, e.g., GKN,* 744 N.E.2d at 399.

There is little or no evidence in the record as to the extent that Wishard's policies and procedures exceed, rather than merely replicate, the basic requirements and skills that any licensed RN must possess. For example, during her deposition Kerr was questioned as to why she was still at the hospital on October 1, 2002, after her shift had been scheduled to end. She explained that no other nurse had come to relieve her at the end of her shift and that she was required to wait until someone did arrive. She further stated that although the Wishard employee handbook prohibited a nurse from leaving his or her station unless another nurse relieved him or her, such conduct also was prohibited by the general standard of care expected of nurses. As Kerr explained, "That's part of your nursing, your oath you take as a nurse. That's called abandonment if you would leave and there's not an RN there.... You can lose your license. It's called abandonment." App. p. 137.

Wishard also notes that before it would accept Kerr (or any nurse) as an RN at the hospital, she had to attend a Wishard orientation class regarding its rules and regulations and pass clinical skills testing specific to Wishard. This would suggest a degree of control of Kerr beyond the general standard expected of all RNs. However, as Kerr notes, this orientation and testing actually was done entirely at CareStaff by using CareStaff's facilities and resources. Thus, unlike a typical Wishard nurse-employee who would attend the orientation at and take the testing directly from Wishard, CareStaff handled this for Wishard before Kerr ever began working there. Wishard entrusted CareStaff with ensuring that Kerr met both the basic competency requirements for an RN and that she had the required specific knowledge and skills that Wishard desires in its nurses. Wishard did not conduct this evaluation on its own.

Wishard also failed to present any evidence regarding the employment status of physicians working in the psychiatric ER—that is, whether they were employees or independent contractors. As a nurse, Kerr would be required to take directions for the care of specific patients from the physicians working in the psychiatric ER. If such physicians were Wishard employees, it would be reasonable to contend that Wishard exercised some "control" over Kerr through directions given to her by its physician-employees. However, if such physicians were independent contractors, as appears to be a frequent arrangement in hospitals, it would be much more difficult to say that Wishard "controlled" Kerr through such physicians. *See Sword v. NKC Hospitals, Inc.,* 714 N.E.2d 142, 152 (Ind.1999) (holding hospitals are not liable for actions of independent contractor physicians, provided patients are given proper notice at time of admission that physicians are not employees of hospital). In any event, we know nothing about the status of the physicians in Wishard's psychiatric ER. Wishard had the burden here of establishing that Kerr was one of its employees.

place injuries. Appellant's Br. p. 13. Our recognition that skilled professionals are subject to less control by an employer in the details of their work is limited to our analysis of a dual employment argument, not worker's compensation coverage generally. Additionally, "control" is only one of seven factors to be considered in deciding a dual employment question, and though it is an important factor, it is not necessarily dispositive. *See GKN,* 744 N.E.2d at 405–06. Thus, even if the issue of "control" weighed against a finding of dual employment, other factors still could dictate such a finding.

We conclude that the evidence is neutral regarding whether Wishard "controlled" Kerr to the extent that she should be considered a Wishard employee. As a skilled, highly trained, and licensed professional, Kerr was not and could not be subject to the same amount of "control" as a less skilled worker. Certainly, Wishard could not ask Kerr to do anything that would fall below a reasonable standard of care for an RN, although it could ask her to exceed that standard. Kerr had to adhere to Wishard policies and regulations, but there is little to no indication as to the extent of these policies and regulations and, in any event, CareStaff, not Wishard, ensured that Kerr was aware of these specific policies and regulations. On the other hand, Kerr was viewed the same as a regular Wishard nurse-employee by her direct supervisor at Wishard, was given assignments in a manner similar to Wishard nurse-employees, and was held to an identical standard as a nurse-employee. In sum, the important factor of "control" does not weigh decisively either for or against a finding that Kerr was a co-employee of both Wishard and CareStaff.

### F. Length of Employment

The longer the length of employment, the more indicative it is of an employer/employee relationship. *GKN*, 744 N.E.2d at 406. The specific staffing agreement at issue in this case indicated that Kerr would work at Wishard for a finite term of approximately four weeks. However, Kerr testified in her deposition that she had a three-month contract to work at Wishard. Either way, this abbreviated period of employment weighs against a finding of dual employment by both Wishard and CareStaff. *See id.* (holding that three-month employment period by "borrowing" employer did not support finding of dual employment); *Jennings*, 832 N.E.2d at 1053 (thirteen-week duration of assignment established by contract weighed against a finding of dual employment).

We also note that Indiana generally is an at-will employment jurisdiction, meaning that terms of employment usually are open-ended, not for a definite or ascertainable term, but terminable by either the employer or employee at any time for any reason; "in Indiana, the presumption of at-will employment is strong...." *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). "Absent a set term of employment, an employment relationship is at will." *McGarrity v. Berlin Metals, Inc.*, 774 N.E.2d 71, 76 (Ind.Ct.App.2002), *trans. denied.* We conclude that where a contractual arrangement between "borrowing" and "lending" employers provides that a worker will be "lent" for a limited, specific time frame, this should be indicative of independent contractor status, not employment by the "borrowing" entity.[3] Providing for a finite duration of employment does not resemble an at-will employment arrangement, which is the normal, default status for employment in Indiana. *See Orr*, 689 N.E.2d at 717. The length of employment factor weighs strongly against a finding of dual employment of Kerr by Wishard and CareStaff.

---

3. In *Fox v. Contract Beverage Packers, Inc.*, 398 N.E.2d 709, 712 (Ind.Ct.App.1980), this court held that where the "borrowing" entity determined the length of time a worker borrowed from a temporary agency would be required to work, it was indicative of dual employment. There is no indication in the case that the amount of time the worker would be borrowed was set forth ahead of time in the contract between the "borrowing" entity and the temp agency, as was the case here in the contract between CareStaff and Wishard.

### G. Work Boundaries

██ The "work boundaries" factor primarily is concerned with the spatial boundaries where the work is to be performed. *See Degussa,* 744 N.E.2d at 414. To the extent there might be other types of "work boundaries" besides spatial ones, such as temporal boundaries, they generally are analyzed under one or more of the other factors. *See id.* Here, all of Kerr's work was to be performed at Wishard hospital's facilities, which favors a finding that Wishard employed her. *See id.*

We do note Kerr's deposition testimony, wherein she indicated that it was her understanding that she was being hired specifically to work in the Wishard psychiatric ER. This does not appear to have been set forth in writing, at least in the materials that were provided to the trial court and this court. Nonetheless, Kerr's understanding was that Wishard was not free to reassign her to different areas of the hospital. This seems to indicate some limitation on Wishard's ability to determine Kerr's "work boundaries." Regardless, we do acknowledge that this particular factor favors a finding of dual employment of Kerr by CareStaff and Wishard.

### H. Balancing of Factors

██ The "right to discharge" factor weighs in favor of dual employment and the "method of payment" factor weighs against it; these factors, which always seem to play out the same way in dual employment cases under the Act, cancel each other out. The "supplying tools and equipment" factor weighs slightly in favor of dual employment and the "belief of the parties" factor weighs slightly against it; again, these factors essentially cancel each other out. The important factor of "control" is, in our view, muddied at best and weighs neither for nor against a finding of dual employment under the particular facts and circumstances of this case. That leaves the "length of employment" factor, which we believe weighs strongly against a finding of dual employment, and the "work boundaries" factor, which weighs in favor of such a finding.

Three factors lead us to affirm the trial court's conclusion that Wishard did not employ Jennings for purposes of the Act. First, Wishard bore the burden of establishing that Kerr was its employee. *See GKN,* 744 N.E.2d at 404. To the extent there are "gaps" in the evidentiary record regarding some of the factors, such as whether Kerr received instructions from independent contractor or employee physicians of Wishard, we consider such "gaps" as a failure of proof on Wishard's part.

██ Second, "the remedies provided in the Worker's Compensation Act are in derogation of common law, and a statute that is in derogation of common law must be strictly construed against limitations on a claimant's right to bring suit." *McQuade v. Draw Tite, Inc.,* 659 N.E.2d 1016, 1018 (Ind.1995) (citation omitted). There is a strong public policy favoring the coverage of employees under the Act. *GKN,* 744 N.E.2d at 404. "However, ... this public policy is not advanced where its effect 'immunize[s] third-party tortfeasors and their liability insurers from liability for negligence which results in serious injuries to one who is not in their employ.'" *Id.* (quoting *Nowicki,* 711 N.E.2d at 544 (Kirsch, J., dissenting)).

██ Finally, the trial court's ruling in this case must be considered presumptively correct, and Wishard was required to convince us that the balance of the evidence is tipped against that ruling. *See id.* at 401. We have not analyzed the seven *Hale* factors in this case in precisely the same way as did the trial court, but we may affirm its decision on any basis supported by the evidence of record. *See id.*

Although the *Hale* factors are nearly evenly split both for and against a finding of dual employment, Wishard has failed to convince us that the trial court ruling was erroneous, especially since it bore the burden of proof below and we must strictly construe the Act against a derogation of Kerr's right to bring a cause of action against a third-party tortfeasor.

## Conclusion

The trial court did not err in concluding that Kerr was not an employee of Wishard. Therefore, it properly denied Wishard's motion to dismiss and permitted Kerr's cause of action to proceed because it is not precluded by the exclusivity provision of the Act. We affirm.

Affirmed.

SHARPNACK, J., concurs.

RILEY, J., concurs in result.