## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 28 2015, 9:43 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Anthony Rose
Anthony Rose Law Firm
South Bend, Indiana

ATTORNEY FOR APPELLEE

Mark James
Anderson, Agostino, & Keller
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Adoption of D.B. and S.R.,

M.R.

*Appellant-Respondent,*

v.

J.W.,

*Appellee-Petitioner*

July 28, 2015

Court of Appeals Case No. 71A03-1410-AD-00385

Appeal from the St. Joseph Probate Court

The Honorable J. Eric Smithburn, Senior Judge

Trial Court Cause No. 71J01-1310-AD-000078

**Mathias, Judge.**

[1] M.R. ("Father") appeals an order of the St. Joseph Probate Court granting the petition of J.W. ("Stepfather") to adopt S.R.[1] Father presents one issue for

---

[1] Stepfather's adoption of Mother's other child, D.B., is not at issue in this appeal.

review: whether the probate court clearly erred in determining that Father's consent to Stepfather's adoption of S.R. was not required.

We affirm.

## Facts and Procedural History

Father and R.B. ("Mother") married on October 15, 2000, and had one child together, S.R., born on January 29, 2003. In January 2010, after a domestic dispute involving Father, Mother, and Mother's father, Father was arrested and charged with the attempted murder of Mother's father, criminal confinement of Mother while armed with a handgun, battery in the presence of S.R., firing a handgun inside an occupied residence, and pointing a loaded handgun at Mother. On October 1, 2010, Father was convicted of the charges and sentenced to twenty years incarceration. His earliest possible release date is in July 2019, when S.R. will be sixteen years old.

Mother and Father's marriage was dissolved on May 13, 2010, shortly after Father was incarcerated. Pursuant to Mother's and Father's property settlement agreement, the dissolution court did not enter a child support order for Father due to his incarceration. Father has not paid any child support since his arrest, and Mother apparently has not sought any child support from Father. No evidence exists that Father has sent S.R. any gifts or correspondence. Father is employed as a graphic designer within the correctional system, is paid $0.65 per hour, and works approximately thirty-five hours per week. His monthly earnings amount to approximately $80.00.

Mother married Stepfather on November 11, 2011. With Mother's consent, Stepfather filed a petition to adopt S.R. on January 3, 2014, and an amended petition on August 26, 2014. In his petition, Stepfather alleged that Father's consent to the adoption was not required because Father had failed to provide child support for S.R. for more than one year.

The probate court held a trial on Stepfather's petition on September 3, 2014. On October 1, 2014, the trial court entered an order making the following relevant findings and conclusions:

> 10. Step-Father has lived with [S.R. and D.B.] since 7-2011.
>
> 11. Mother and Step-Father were married on 11-11-2011.
>
> 12. Step-Father earned a baccalaureate degree and 2 masters degrees in psychology and criminal justice.
>
> 13. Since 2012, Step-Father has served as a professor at Brown Mackie College in Michigan City. Indiana.
>
> 14. Mother is gainfully employed at Fifth Third Bank.
>
> 15. Step-Father has the financial resources to care for and support [S.R. and D.B.].
>
> 16. Step-Father does chores with the children around the home and cooks meals for the children and Mother.
>
> 17. Step-Father helps [S.R. and D.B.] with their school work.
>
> 18. Step-Father is able to care for, support, and educate the children.
>
> 19. Mother consents to the adoption of [S.R. and D.B.] by Step-Father.
>
> 20. [S.R. and D.B.] do not possess real or personal property.
>
> 21. Step-Father has not been convicted of a felony or a misdemeanor relating to the health and safety of children.

22. The consent to adoption of the Department of Child Services is not required.

23. The marriage of Mother and Bio-Father was dissolved on 5-13-2010.

24. Bio-Father failed to pay support for [S.R.] after 5-13-2010.

25. In 1-2010, Bio-Father was arrested and charged with attempted murder; criminal confinement (Mother) while armed with a handgun; battery (Mother) in the presence of children less than 16 years of age ([S.R.]); firing a handgun inside an occupied residence; and pointing a loaded handgun at Mother.

26. On 10-1-2010, the St. Joseph Superior Court, in Cause Number 71DO1-100 1-FA-00003, entered judgments of conviction and sentencing on all 10 counts of a criminal information and Bio-Father was sentenced to the Indiana Department of Corrections.

27. The St. Joseph Superior Court, in its Judgment of Conviction and Sentencing Order, continued in effect the no contact order as to Bio-Father and [S.R. and D.B.].

28. The St. Joseph Superior Court, in its Judgment of Conviction and Sentencing Order, recommended that Bio-Father receive psychiatric treatment while serving his sentence at the Indiana Department of Correction. There is no evidence that Bio-Father has received psychiatric treatment, which causes the Court concern, particularly for the best interests of [S.R.].

29. Bio-Father's earliest incarceration release date is 7-2019.

30. [S.R.] will be 16 years of age on Bio-Father's earliest release date.

31. During his incarceration in 2011, Bio-Father was employed with Penn Products, earning 75 cents per hour.

32. Since 2014, Bio-Father was employed 35 hours a week as a graphic designer, earning 65 cents per hour.

33. Bio-Father knew [S.R.'s] address in order to pay any support for [S.R.].

34. Bio-Father acknowledged in Open Court that he paid no support to [S.R.] from 2010 to date.

35. Bio-Father has earned approximately $100.00 per month while he is incarcerated.

36. Bio-Father had the ability to pay some support for [S.R.] but he chose not to do so.

37. Bio-Father has a common law duty to pay support even in the absence of a court order.

38. Bio-Father's consent to adoption, by clear and convincing evidence, is not required because Bio-Father, while [S.R.] was in the custody of Mother and Step-Father, for at least 1 year, knowingly failed to provide for the care and support of [S.R.] when able to do so, as required by law.

39. Step-Father and Mother have provided [S.R. and D.B.] with a loving, stable home environment.

40. It is in the best interests of [S.R. and D.B.] that Step-Father's Petition for Adoption be granted.

* * *

IT IS THEREFORE ORDERED as follows:

1. Adoptive Father's Petition for Adoption is GRANTED.

2. The Bio-Father's Motion to Contest Adoption is DENIED.

3. The parental rights of Bio-Father . . . as to [S.R.] are terminated.

Appellant's App. pp. 8-10 (internal citations omitted).

Father now appeals.

## Discussion and Decision

Upon review a trial court's ruling in an adoption case, the appellant bears the burden of overcoming the presumption that the trial court's decision is correct. *In re Adoption of A.S.,* 912 N.E.2d 840, 851 (Ind. Ct. App. 2009). We will neither

reweigh the evidence or judge the credibility of witnesses; instead, we will consider the evidence most favorable to the trial court's decision, and the reasonable inferences to be drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Id.* We will not disturb the trial court's ruling unless the evidence leads to only one conclusion and the probate court reached an opposite conclusion. *Id.*

[9] Where the trial court enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we employ our familiar two-tiered standard of review: we must determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* We will not set aside the findings or the judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous if the record is devoid of any evidence or reasonable inferences to support them, while a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. *Id.*

[10] Father claims that the probate court erred in granting Stepfather's petition to adopt despite Father's lack of consent. Parental consent is generally required to adopt a child in Indiana. *See* Ind. Code § 31-19-9-1. However, consent to adoption is not required from:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Ind. Code § 31-19-9-8(a).

[11] Father argues that Stepfather did not prove that he knowingly failed to provide for the care and support of S.R. when able to do so for a period of at least one year. Specifically, Father argues that the probate court clearly erred in using "the fact that Father earned income as its sole basis for determining that Father had the ability to pay some support while incarcerated."[2] Appellant's Br. at 9. He maintains that "no evidence . . . indicate[s] where and how Father spent the $0.65 per hour that he earned while in prison." *Id*. at 11.

[12] However, we do not address Father's argument regarding his ability or failure to pay child support for S.R. while incarcerated because we affirm the trial court's judgment based on Father's failure to communicate significantly with S.R. when able to do so.

---

[2] Father served in the United States Navy and was honorably discharged in 1997. After his discharge from the Navy, he was entitled to receive monthly VA benefits in the amount of $1,298, and S.R. received an additional monthly benefit of $1,228. Father's and S.R.'s eligibility to receive full VA benefits ended shortly after his criminal convictions, at which point, he became entitled to only 10% of the original payment and S.R. became entitled to nothing. However, he continued to receive monthly payments after his eligibility ended and ultimately received over $7,000 in overpayments. This money was deposited into an account held jointly by Mother and Father and was spent by Mother on household and child-related expenses. The VA notified Father that he would have to repay the funds and that it would apply his monthly entitlement to the overpayment until it was repaid. Father argues that his "only possible avenue to provide meaningful support to [S.R.] during Father's incarceration was through VA benefits" and that "due to Mother spending the VA benefits," S.R. no longer received the $1,200 she would have received had Father not been required to repay the overpaid amount. Appellant's Br. at 12-13. Essentially, he argues that his failure to support S.R. is Mother's fault, not his. This argument has no merit. Father's own criminal conduct was what led to S.R.'s ineligibility to apportionment benefits, and his delay in notifying the VA of his conviction and incarceration led to the overpayment.

[13] At the hearing on Stepfather's petition, Father admitted that S.R. and Mother lived in the same house in which the family lived prior to Father's incarceration and Father's and Mother's divorce. He admitted that he knew "how to send stuff there." Tr. p. 43. He also acknowledged that his sentencing order permitted him to communicate with S.R. through Mother and Stepfather and that he had their address. However, the record does not reveal any evidence that Father communicated with S.R. during his incarceration.

[14] Indiana Code section 31-19-9-8(a) is written in the disjunctive — consent of the parent is not required where either failure to communicate significantly *or* failure to provide support is established. *In re Adoption of B.R.*, 877 N.E.2d 217, 218 (Ind. Ct. App. 2007). Moreover, we may affirm a trial court order on any basis supported by the record. *Wishard Mem'l Hosp. v. Kerr*, 846 N.E.2d 1083, 1093 (Ind. Ct. App. 2006). Because no evidence that Father has sent S.R. any gifts or correspondence or otherwise communicated significantly with her was presented, we conclude that the trial court did not clearly err in finding that Father's consent was not required in granting Stepfather's petition to adopt S.R. *See In re Adoption of T.W.*, 859 N.E.2d 1215 (Ind. Ct. App. 2006) (trial court did not clearly err by concluding that incarcerated father failed, without justifiable cause, to communicate significantly with his children; record did not demonstrate that father actually tried to write to the children or telephone them, and father's argument that his overtures would have been impeded was speculative); *Williams v. Townsend*, 629 N.E.2d 252 (Ind. Ct. App. 1994) (occasional letter or card sent to child from incarcerated parent together with

one telephone conversation with child was "token communication" that trial court properly disregarded when determining that parent's consent to adoption was not required).

[15]    Affirmed.

May, J., and Robb, J., concur.