AMERICAN COAL MINING COMPANY *v.* CRENSHAW ET. AL.

[No. 11,069.    Filed December 23, 1921.    Rehearing denied February 24, 1922.]

MASTER: AND SERVANT.—*Workmen's Compensation Act.—Injury Arising Out of and in Course of Employment.—Injury to Employe on Train Furnished by Employer.*—Where an employe of a mine owner returning from work was injured in alighting from a train operated under a contract between the employer and a railroad company as a private carrier for the exclusive carriage of the mine owner's employes to and from work, the injury arose out of and in the course of the employment within the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), although the agreement between the employer and the employes provided for the retention of a stipulated sum each month from the wages of the employes for the privilege of using the train, and the right to compensation is not precluded by the fact that applicants have a remedy against the railroad company. (*Vandalia R. Co.* v. *Stevens* [1917], 67 Ind. App. 238, distinguished.)

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Edna Crenshaw and others against the American Coal Mining Company. From an award for applicants, the defendant appeals. *Affirmed.*

*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, W. Paul Stratton, John S. Taylor* and *G. W. Buff,* for appellant.

*John A. Riddle,* for appellees.

NICHOLS, J.—This was a proceeding before the Industrial Board by appellees against appellant for compensation. It is alleged in the application for such

compensation that one Curtis Crenshaw of whom appellees were dependents died May 4, 1920, from personal injury received by him in an accident arising out of and in course of his employment with appellant. The Industrial Board after hearing the evidence found that the deceased received the injury which resulted in his death while in due course of his employment and rendered its award in favor of appellees accordingly, from which award appellant prosecutes this appeal.

It is the contention of appellant that the injury of the deceased did not arise in the course and out of his employment by appellant and that therefore it is not liable. It appears by the evidence, which is substantially undisputed, that on May 4, 1920, the deceased was working for appellant and that he had worked during the regular hours that day. He began work at seven o'clock in the morning and quit work at three o'clock in the afternoon. He was a machine man. There was operated from appellant's mine to the city of Bicknell, Indiana, a train which was operated under a written contract between appellant and the Vandalia Railroad Company, the substance of which contract, so far as we need to consider, was that whereas appellant had requested the railroad company to furnish it special facilities for getting miners living in the city of Bicknell and the immediate vicinity, and employed by appellant, to and from its mine, and said railroad company was not a common carrier of passengers for hire over the branch of road to be used, and did not operate any passenger trains thereon but was willing as a private carrier, and not otherwise, to furnish appellant with facilities desired by it for getting its miners to and from the mine—The parties to said contract entered into an agreement to the effect that the railroad company as a private carrier, and not otherwise, agreed to furnish

appellant a sufficient number of cars and engine and train crew, and to operate the same between said city of Bicknell and the coal mine, the cars to be used by appellant for the sole purpose of carrying its miners between said city and its mine. The railroad company agreed to furnish appellant a sufficient number of cars to carry its miners each day taking them to the mine from the city in the morning and returning with them in the afternoon of each working day. Appellant agreed to pay the railroad company $250 per month, with a provision that if the number of persons carried exceeded 250 the coal company should pay an additional $1 for each person so handled in excess of 250, and with a provision that there should be no deduction for any cause from the payment of $250 per month. On this train many of the employes of appellant rode to their work in the morning and rode from the mine to Bicknell in the evening. There was a written agreement with each miner riding upon the train in which it was stipulated that in order to obtain the benefit of being carried on such train which appellant proposed should be run for the joint accommodation of appellant and the men employed at the mine, the contracting miner agreed to pay $1 per month toward the expense of running the train, the same to be retained by appellant. A certificate was furnished to each miner who executed this agreement giving him the right to ride upon such train between the city of Bicknell and appellant's mine. The distance from the city to the mine was about four miles. It appears that the Commercial Club of the city of Bicknell in the early history of the operation of the train, paid the deficit which appellant had obligated itself to pay, but later such deficit was paid by appellant. Later, the railroad company required a guarantee of $500 per month but there was no new contract written.

At the time of the injury of the decedent the miners were each paying $1.25 per month to ride on the train. The train was operated under the direction of the railroad and by its employes. Appellant claimed no control over the deceased before seven o'clock in the morning or after three o'clock in the afternoon, and it was optional with him as to whether or not he rode on the train. He was not in any manner limited by appellant as to how he should come to his work and how he should return home therefrom. All of the employes did not ride on the train, some of them walked and some came in automobiles. On the afternoon of May 4, 1920, as the train was crossing Main street in the city of Bicknell, the deceased while riding thereon in going home from his work, and in attempting to alight was injured and died as a result of such injuries.

Appellant contends that an injury under such circumstances as these did not arise in the due course of and out of the employment of the deceased. The question here presented has not been decided by this court, but similar questions have been given judicial consideration in other jurisdictions, both American and English, in construing like provisions of the Workmen's Compensation Act.

In *Cremins* v. *Guest, etc.* (1907), 1 B. W. C. C. 150, a mining company by agreement with the Great Western Railway Company and the Rhymney Railway Company ran a train on their line each morning and evening for the accommodation of their own workmen. The train ran between Dowlais and Bedlinog close to which place the mine was situated, and it was an implied term of the contract of service between the workmen and the employers that the train should be provided by the employers, and that the workmen should be entitled to travel by it to and from their work without charge. There

was no obligation to use the train. A workman at the Bedlinog station, who intended to travel home by the train, was, during a rush of workmen to enter the train, pushed off the platform and killed. It was held that the relationship of master and servant existed at the time of the accident, and that the widow as a dependent was entitled to recover.

In *Davies* v. *Rhymney Iron Co.* (1887), 2 B. W. C. C. 22, a colliery company provided a train on their railway to take the workmen from the colliery to their homes. A collier on reaching the point nearest his home, three-quarters of a mile from the colliery, met with an accident. It was held that the accident arose out of and in the course of the employment.

In *Mole* v. *Wadworth* (1913), 6 B. W. C. C. 129, a workman, whose only method of getting to and from work was by means of a boat supplied by his employer, was drowned by falling from the boat as he was returning at the usual hour. It was held that the accident arose out of and in the course of the employment.

In *Walton* v. *Tredegar Iron & Coal Co.* (1913), 6 B. W. C. C. 592, a collier, living six miles from the pit where he worked, traveled free of charge to and from his work on a train provided by a railway company at the instance of the employers. By an agreement the collier indemnified the employers against loss from accident on the journey, and agreed to desist from exercising the privilege of traveling by the train whenever his employers required him to do so. In getting into this train for the journey home the collier was killed by an accident. It was held that the accident arose out of and in the course of the employment.

In *Richardson* v. *Morris* (1914), 7 B. W. C. C. 130, a laborer was engaged on a farm on an island about a mile from the mainland. He lived there, in the farmhouse,

and was paid a yearly wage. He had recently married, but his wife remained with her parents on the mainland. One Sunday he wished to visit his wife, and his master ferried him over in his (the master's) boat. It was a rough day, and in attempting to land the man slipped, injured himself internally and died soon afterwards. It was held that the accident arose out of and in the course of his employment.

In *Dominguez* v. *Pendoia* (1920), 46 Cal. App. 220, 188 Pac. 1025, it was held that where an employe was killed by being thrown from an automobile furnished by the master to transport the employes to the place of work his injuries arose out of and in course of his employment within the Workmen's Compensation Act.

In *Littler* v. *Fuller Co.* (1918), 223 N. Y. 369, 119 N. E. 554, it was held that where an employer, on demand of employes for free transportation from the railway station to the place of building a house, hired a truck to carry them to and from work, an employe injured while in such truck on the way to the station was injured within the scope of the employment under the Workmen's Compensation Law.

In *In re Donovan* (1914), 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915C 778, it was held that where a servant was injured while riding to his place of work in a wagon which was furnished by the master incidental to the employment and as a part of the contract of employment, the injury arose out of and in the course of his employment under the Workmen's Compensation Act.

In *Swanson* v. *Latham* (1917), 92 Conn. 87, 101 Atl. 492, it was held that a workman whose contract required his employer to pay the expense of his transportation to and from his home while engaged in work out of town, was killed at a railroad crossing while going home after

his day's work in an automobile owned and driven by a fellow workman which had been engaged by the employer for the purpose, that the accident arose out of and in the course of the decedent's employment within the meaning of that expression in the Workmen's Compensation Act and that the master was liable not only for the death of this particular workman, but also for that of the owner and driver of the car who was killed at the same time.

In *Scalia* v. *American, etc., Co.* (1918), 93 Conn. 82, 105 Atl. 346, it was held that the injury and death to tobacco plantation workers after they had entered into a contract of employment, and while being driven to the place of work in an automobile furnished by the employer pursuant to the employment contract, arose in the course of and out of their employment.

In *Fisher* v. *Tidewater Bldg. Co.* (1921), (N. J. Sup.) .114 Atl. 150, it was held that where a workman was killed some distance from the place of his employment, while boarding a train on which the employer furnished free transportation from the place of employment to the workman's home, that the accident causing death was one which arose out of and in the course of his employment within the Workmen's Compensation Act, so that his widow was entitled to an award.

In *Western Indemnity Co.* v. *Leonard* (1921), (Tex. Civ. App.) 231 S. W. 1101, it was held that where a ship building company operated under a contract with the federal government, on a cost plus profit basis and the company's expenses in furnishing railway transportation to its employes were part of the costs, and an employe, after leaving the train at the place of work and while he was on the railroad right of way, started to return to the train on seeing a signal that there would be no work that day, and was injured in jumping across

a ditch between him and the train, that the injury occurred in the course of the employment within the Workmen's Compensation Act.

In *Payne* v. *Industrial Com.* (1921), 296 Ill. 223, 129 N. E. 830, it was held that where a train crew had been relieved from service under the Hours of Service Act (§8678 U. S. Comp. Stat. 1918) but had obtained permission from the train dispatcher to ride into a terminal on the first train going in that direction, and where under the rules of the company the employes were paid while deadheading into the terminal, the employes, though not on duty within the Hours of Service Act while deadheading into the terminal, were in the employ of the railroad at such time within the Workmen's Compensation Act.

In *Central Construction Co.* v. *Harrison* (1920), 137 Md. 256, 112 Atl. 627, it was held that where an employer agreed to furnish employes free transportation to and from work and arranged with railroad for such transportation, and where employes were at first transported by regular train, but later, because of increasing numbers, by special worktrains, and where by subsequent agreement the payment for transportation of such employes was made direct to the railroad by the United States government for which the work was being done, an employe who was directed to board the wrong train, and, on discovery of mistake, was injured by boarding the following regular train which would carry him to his work, was injured by an accident which arose out of and in the course of his employment within the Workmen's Compensation Act.

From the foregoing authorities the general rule seems to be that where the conveyance for the employes has been provided by the employer, after the real beginning of the employment, whether such conveyance be his own

or is one used for his benefit by virtue of a contract with another, the same being in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employes, and is one which the employes are required, or as a matter of right are permitted, to use by virtue of their contract of employment, the employer is liable. In the instant case it is undisputed that the train which was carrying appellant's miners, including the decedent, to and from their place of work was being operated under a contract between appellant and the railroad company, and that the consideration for such operation was paid by appellant. We attach no importance to the fact that the employe had agreed to pay, and was paying at the time of the injury, $1.25 per month for the privilege of using the train, such sum being retained by appellant from the employe's wages. This was but an incident of his employment. It also appears that the train was being used for the exclusive purpose of carrying appellant's employes, including the decedent, to and from the place of work.

We follow the principle above set out and hold that the decedent's injuries arose in due course and out of his employment.

Appellant cites the case of *Vandalia R. Co.* v. *Stevens* (1917), 67 Ind. App. 238, 114 N. E. 1001, as a case upon which it relies for the purpose of showing that the railroad company was not a private carrier by virtue of its contract with the mining company, but that it was a common carrier, and as such could not avoid its liability. We need not discuss that case further than to say that the action was at common law for injuries sustained because of the negligence of appellant, and the statements in such opinion are made with reference to the relation of appellee as a passenger to the appellant as a

common carrier, the court not primarily considering the relation of the appellee and the mining company at the time of his injury. The question there involved was not the same as in this case. That, notwithstanding the relation of the appellee in that case to the railroad company as one of its passengers as determined by the opinion, he might have elected his remedy against the mining company instead of against the railroad company, is well established; and the fact, if such it is, that in this case appellees might have their remedy against the railroad company did not preclude them from their remedy, under the Workmen's Compensation Act, (Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918) against the mining company, appellant herein.

The award is affirmed.