Jackie **CHANEY**, Lowell **Helton** and James **Kirkman** d/b/a C & H Stone Company, Appellants-Defendants Below,

v.

Lexie E. **ROBERTS**,
Appellee-Plaintiff Below.

No. 2–1084A316.

Court of Appeals of Indiana,
Third District.

March 11, 1985.
Rehearing Denied May 17, 1985.

Robert C. Rupp, Donn H. Wray, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for appellants-defendants.

William C. Lloyd, Ferguson, Ferguson & Lloyd, Bloomington, for appellee-plaintiff.

STATON, Presiding Justice.

Lexie Roberts was severely injured when the company truck in which he was a passenger struck a telephone pole. At the time of the accident, Roberts' boss, Jackie Chaney, had been driving himself and Roberts home from work. Roberts successfully applied for worker's compensation; the award was adopted by the Industrial Board (Board) with the exception of the cost of living clause. Jackie Chaney and his business partners, d/b/a C & H Stone Company (C & H) appeal this award on the theory that Chaney was not injured in an accident arising out of and in the course of his employment.

Affirmed.

This Court is bound by the Board's factual determinations. IC 1974, 22-3-4-8 (Burns Code Ed.); *Overshiner v. Indiana State Highway Com'n* (1983), Ind. App., 448 N.E.2d 1245, 1247. Without weighing the evidence, we will consider the evidence most favorable to the Board's decision. *Id.* Reversal occurs only if the evidence requires a different result. *Id.*

The facts most favorable to the Board's decision are as follows: In 1978, Roberts was employed by C & H as a salaried supervisor on 24 hour call. At that time, C & H provided a company-owned truck for Roberts' transportation to and from work. In 1979, Roberts purchased a truck to replace the one C & H had provided with the understanding that C & H would provide the gasoline, oil, and maintenance. This truck was treated for all intents and purposes as a company truck: it bore a company insignia on the door, carried the company's maintenance tools, was used routinely to transport other employees to and from work, and fulfilled the company's promise to provide Roberts with transportation to and from work.

Consistent with his employment agreement with C & H, Roberts drove several of C & H's 8 hour employees to and from work. Thursday, September 3, 1981, was no exception. After the normal working day ended at approximately four o'clock Thursday afternoon, Roberts, Chaney and some other employees stayed late at the office which was not unusual. Chaney offered to take Roberts home in his company truck so that employees who had ridden to work with him Thursday morning could take his truck home. They were to leave the truck at an agreed location.

After the card game, Chaney and Roberts went to talk to some company tenants about some problem that had arisen. From there the men stopped at the mill to lock up and then proceeded to the home of Roberts' daughter. After Roberts talked briefly with his daughter, he got back into the truck. Chaney wanted to go to a nearby tavern for a drink; Roberts indulged him and drove to the tavern. Approximately one and one half hours after arriving at the tavern, Roberts was concerned about picking up his unlocked truck. Also, Friday was a normal work day and he had to drive

others to work. Since Chaney did not leave the tavern when Roberts asked him to leave, Roberts went out to the company truck and fell asleep. Approximately three hours later, Chaney left the tavern and without waking Roberts, drove the truck toward the site where Roberts' truck had been parked. The truck left the road and struck a telephone pole on the passenger side of the truck. Roberts' injuries rendered him a quadriplegic.

Based upon the above facts the Board made the following findings and conclusions:

"Said Hearing Judge having read the stipulation and Exhibits and having heard the evidence in said cause and having reviewed the file and being duly advised in the premises, now adopts as findings the above stipulation and Exhibits.

It is further found that on September 4, 1981, C & H Stone Company was a general partnership consisting of three general partners, Jackie L. Chaney, Lowell Helton and James Kirkman, and was in the business of fabricating and selling limestone. The principal office of C & H Stone Company was at said time in Monroe County, Indiana.

It is further found that on and before September 4, 1981, plaintiff was in the full-time employ of C & H Stone Company as a supervisor earning $300.00 per week salary and thus in excess of the maximum.

It is further found that since June, 1979, the plaintiff used his own motor vehicle to go to and from work and for duties while at work; that the said motor vehicle had a Company insignia placed on its side and also all maintenance, gasoline and oil was provided by the defendant.

It is further found that the plaintiff's duties were that of a supervisor and the only persons to whom he reported were the partners of the defendant; that in addition, he was to be 'on call' twenty-four hours a day.

It is further found that the motor vehicle operated by the plaintiff was used to transport employees of the defendant to and from defendant's place of employment; the manner in which this was done was by the plaintiff picking up the employees at their residence in the morning and dropping them off after work that evening. This was done as a benefit to employees so that they might save money that otherwise would be expended by them for gasoline.

It is further found that on September 3, 1981, the plaintiff did drive the said motor vehicle to work that morning with the normal employees; that after the normal working hours on said date a number of the employees decided to engage in a poker game at the defendant's place of business.

It is further found that the poker game had become a customary one and was participated in by the partners themselves, and was furnished with alcoholic beverages furnished by the defendant and had become a method used by the defendant to create a good working relationship amongst the employees.

It is further found that on this particular occasion the employees who normally rode with the plaintiff decided not to stay and partake in the game, but decided to drive the plaintiff's motor vehicle back to their homes; that the said fellow employees obtained the permission and approval of both the plaintiff and partner, Jack Chaney, to drive said motor vehicle back to their residence and, in return, Jack Chaney agreed to take the plaintiff back to get his motor vehicle later on that evening.

It is further found that after the game ended at approximately 6:30 P.M., the plaintiff and the partner and owner, Jack Chaney, embarked upon another mission of the defendant by going to a tenant's dwelling of the defendant to solve some problems that had arisen; that after attempting to solve said problems Jack Chaney and the plaintiff commenced to drive the plaintiff to a point where the plaintiff could pick up his vehicle; that

after attempting and failing to find the plaintiff's wife in order that she might drive the plaintiff to his vehicle and thus save Jack Chaney the time and effort of doing so, the two parties again proceeded to get the plaintiff's vehicle.

It is further found that on the journey, Jack Chaney insisted on stopping and staying for a prolonged period of time at a local tavern where the plaintiff, after indulging in a drink with his boss, slept in the vehicle outside the tavern awaiting for the journey to proceed.

It is further found that finally at shortly after midnight, on September 4, 1981, Jack Chaney came out to his vehicle and commenced driving his vehicle to the point where the plaintiff's vehicle was located; that en route Jack Chaney drove the vehicle off the road and into a telephone pole causing serious injury to the plaintiff; that as a result of the said accident, plaintiff's physical condition is that of a quadriplegic and he underwent significant medical care; that as a result of said injury, the plaintiff is unable to perform any reasonable gainful employment and that he is incapable of moving his arms and legs and that his training and past experience has been that of a laborer, and at the age of 50 years he is generally incapable of engaging in a new vocation; that as a result of his injuries the plaintiff is 90% permanently partially impaired, and in addition, plaintiff's injuries have rendered him permanently and totally disabled.

It is further found that in order to maintain and sustain plaintiff's life it is necessary that he have the care of an attendant on a twenty-four hour basis and that he receive medical treatment and prescriptions.

It is further found that in addition to his medical treatment plaintiff has had to have his home refurbished to a minor extent in order that he may move about in his wheel chair; that the total cost of said minor renovations is $742.96, and the specific improvements are as follows: Concrete Ramp (concrete, stone and labor) $541.31; Board Ramps (materials only, no labor cost), $70.00; Weights for Home Therapy (lumber and coverings), $100.00; Two Fever Thermometers, $4.70; Blood Pressure Kit, $19.95; and Bed Pan, $7.00.

Said Hearing Judge now finds for the plaintiff and against defendant on plaintiff's Form 9 application filed August 31, 1983. [*sic*]

## AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Industrial Board of Indiana that plaintiff is 90% permanently partially impaired and that he is permanently totally disabled and is entitled to compensation at the rate of $140.00 per week for a specific period of 500 weeks.

It is further ordered that all deferred payments of compensation shall be brought up to date, paid in cash and in a lump sum.

It is further ordered that the defendant is not obligated to pay more than the statutory benefits under the Workmen's Compensation law.

It is further ordered that the defendant is obligated to pay $60.00 per day for an attendant to care for the plaintiff's daily needs; that said attendant may be that of his wife, and the amount of said care shall increase on a cost of living basis from year to year.

It is further ordered that defendant shall be responsible for all future medical care of the plaintiff, which care is necessary to maintain or sustain his permanent partial impairment and which is ordered and/or prescribed by his present attending physicians, Dr. Larry Ratts and Dr. Robert Silbert, or such other physicians as they, from time to time, shall refer the plaintiff.

It is further ordered that defendant pay all statutory medical and in the event the parties cannot agree as to the extent of the same then they shall notify the Industrial Board and a hearing will be held on the same.

It is further ordered that the defendant shall pay the costs, if any, taxed in said cause.

It is further ordered that all compensation payable by virtue of this award shall be paid direct to plaintiff, except as hereinafter ordered paid plaintiff's attorney.

It is further ordered that the fees of plaintiff's attorney shall be: a minimum fee of $50.00; and in addition thereto, 20% upon the first $5,000 recovered; 15% upon the second $5,000 recovered; and 10% upon all sums in excess thereof; said fees to be paid by the defendant direct to plaintiff's attorney, William C. Lloyd, with credit to the defendant against the compensation herein awarded plaintiff for all sums paid out as attorney fees in accordance with this award.

It is further ordered that plaintiff's attorney, William C. Lloyd, is entitled to 10% of the total medical bills; that 90% of the medical bills is the total amount due and owing from the plaintiff to the medical providers.

It is further found by a majority of the Judges of the Full Industrial Board that the Single Hearing Judge's decision should be adopted, with the exception of the cost of living clause in that the amount of said care shall not increase on a year to year basis."

▇ It is well-settled that Worker's Compensation laws are to be liberally construed. *Suburban Ready Mix Concrete, etc. v. Zion* (1983), Ind.App., 443 N.E.2d 1241, 1242. Another general rule is that accidents occurring on the way to or from the place of employment are not compensable because they do not arise out of and in the course of employment. However, an exception to this rule which is applicable to this case, is where transportation to or from work is furnished by the employer. *Stadler Fertilizer Co. v. Bennett* (1954), 124 Ind.App. 524, 527, 119 N.E.2d 26, 27.

Even though C & H agrees with the law as stated above, it contends that once Roberts and Chaney left the home of Roberts' daughter, Roberts was no longer within the course of his employment nor was he engaged in activity arising out of his employment. It further asserts that because Roberts could have taken another route home, but instead chose to ride with Chaney, the exception no longer applies. We disagree.

▇ Roberts was, at the time of the accident, within the coverage provided by the worker's compensation laws. While Roberts' deviation for personal purposes (stop at the tavern) might have removed him from compensation coverage during the course of the deviation, the evidence did not indicate that either Roberts or Chaney intended to abandon the work-connected travel home. Therefore, when the two resumed the trip home from the tavern, coverage resumed. *Rainear v. C.J. Rainear Co., Inc.* (1973), 63 N.J. 276, 286, 307 A.2d 72, 77. Because Roberts and Chaney resumed their travel home which C & H provided as part of Roberts' employment benefits, Roberts does not need to show that there was any causal connection between the accident and the performance of some duty of his work. Neither must he show that the accident arose during the scope of his employment. *Olinger Const. Co. v. Mosbey* (1981), Ind.App., 427 N.E.2d 910, 912.

Affirmed.

HOFFMAN and GARRARD, JJ., concur.