**Yolanda RICE, as Guardian and Next Friend of Dagoberto LOPEZ, Appellant–Plaintiff,**

v.

**Albert HARPER, Kenny Industrial Services, LLC, and Kenny Industrial Services of Hammond, Appellees–Defendants.**

No. 64A03–0801–CV–3.

Court of Appeals of Indiana.

Aug. 22, 2008.

Rehearing Denied Oct. 31, 2008.

---

Andrew B. Miller, Scott L. Starr, Starr Austen & Miller, LLP, Logansport, IN, Attorneys for Appellant.

Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Dagoberto Lopez was injured while riding in a van driven by an employee of Kenny Industrial Services. Yolanda Rice, as Lopez's guardian and next friend, filed suit against Kenny. Kenny filed a motion to dismiss, asserting the Worker's Compensation Act provided Lopez's exclusive remedy. The trial court granted the motion to dismiss, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Lopez was employed by Labor Ready, a temporary staffing agency. On October 3, 1999, Lopez was assigned to work an evening shift for Kenny. Kenny had a contract with NIPSCO to clean its generating plant in Wheatfield, Indiana, and Kenny assigned Lopez to work on that project.

The generating plant had to be shut down while it was being cleaned. To minimize downtime for NIPSCO, Kenny required its workers to report to Kenny's plant and ride together in company vans to the generating plant. This ensured all workers were on time and reduced the number of vehicles that would have to pass through the generating plant's security gates.

Kenny selected drivers from an approved list. Drivers were required to drive directly to and from the generating plant following a route selected by Kenny. Workers riding in the van were expected to comply with Kenny's rules, which included wearing seat belts and not drinking alcohol.

Kenny provided workers, including Lopez, with protective gear and industrial cleaning equipment. Lopez's work at the generating plant was supervised by Kenny employees.

When a shift was complete, workers generally rode in the vans provided by Kenny because their personal vehicles would be at Kenny's plant. However, Kenny allowed workers to make other arrangements for getting home after a shift. Kenny's primary concern was making sure all workers left the generating plant.

On the morning of October 4, when Lopez's shift was over, he boarded a company van driven by Albert Harper. Harper fell asleep and began to run off the road. When the passengers woke him up, Harper overcorrected and caused the van to roll over. Lopez suffered brain damage as a result of the accident.

Lopez has received worker's compensation benefits through Labor Ready's insurer. Rice brought a personal injury suit on Lopez's behalf against Kenny. Kenny moved to dismiss for lack of subject matter jurisdiction, asserting Lopez was an employee of both Kenny and Labor Ready; therefore, the Worker's Compensation Act provided Lopez's exclusive remedy. The parties submitted memoranda and designated evidence. After hearing oral arguments, the trial court granted the motion to dismiss without making findings.

## DISCUSSION AND DECISION

■ Our standard of review of a motion to dismiss under Ind. Trial Rule 12(B)(1) depends on what happened at the trial court:

> [W]here the facts are in dispute but the trial court rules on a paper record

without conducting an evidentiary hearing, then no deference is afforded the trial court's factual findings or judgment because under those circumstances a court of review is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction." Thus, we review *de novo* a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

*GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001) (citations omitted).

Lopez and Kenny dispute some of the pertinent facts and the inferences to be drawn from the facts. The trial court ruled on a paper record; therefore, we are in the same position as the trial court and will review the record *de novo.*

### 1. *Authentication of Evidence*

 "In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support." *Id.* at 400. The parties disagree as to whether the trial court properly received as evidence a document designated by Lopez, which is labeled "Conditions of Service" and purports to be Labor Ready's standard terms. (Appellant's App. at 133.)

Lopez designated two affidavits with exhibits to establish a chain of custody for the Conditions of Service. These materials contain a letter from Christoper Lee, counsel for Lopez, to Craig Anderson of Recovery Services International. Labor Ready had hired Recovery Services to pursue any subrogation rights it might have.

Lee asked Anderson to provide a "copy of any and all documents, letters, agreement etc. concerning agreements between Labor Ready and Kenny as of 10–4–99 and specifically concerning Dag Lopez." (*Id.* at 210.) Anderson's affidavit states he requested these documents from Linda Maw at Labor Ready. Anderson. forwarded those documents, which included the Conditions of Service, to Lee on January 18, 2005. The Conditions of Service are attached to the affidavits of Anderson and Lee, and both affidavits state that the document is in the same condition as it was when it was received.

 Kenny filed a motion to strike, arguing the document was not authenticated. The trial court denied the motion, and Kenny claims that ruling was erroneous.[1] "Authentication requires the proponent of the evidence to prove that 'the matter in question is what its proponent claims.'" *Hightower v. State,* 735 N.E.2d 1209, 1214 (Ind.Ct.App.2000) (quoting Ind. Evidence Rule 901), *trans. denied* 741 N.E.2d 1261 (Ind.2000). The determination whether evidence has been authenticated is within the discretion of the trial court. *Id.* We will reverse the trial court's ruling only for an abuse of discretion. *Id.* An abuse of discretion occurs when the decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.*

Kenny argues authentication of a business record requires the proponent to "call a witness who has a functional understanding of the record keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document." (Appellee's Br. at 13.) In

---

1. Lopez argues Kenny waived this argument by relying on the Conditions of Service before the trial court. We disagree. The Conditions of Service were first designated by Lopez in his response to the 12(B)(1) motion. Kenny filed its reply at the same time as the motion to strike. Kenny's reply brief made an alternative argument based on the Conditions of Service that was clearly denominated as such.

support, Kenny cites *Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind.Ct.App.2006). That decision discusses the hearsay exception for business records in Evid. R. 803(6).[2] A business record must fall within the scope of Evid. R. 803(6) to be self-authenticating under Evid. R. 902(9).

We agree the document is not self-authenticating; however, the document may be authenticated under Evid. R. 901. Evid. R. 901(b) provides a non-exclusive list of methods by which evidence may be authenticated. Among these is testimony of a witness with knowledge. Evid. R. 901(b)(1). To authenticate a nonfungible item, a chain of custody is not necessary, but a "chain of custody still may be shown as an alternative method of identification." Robert Lowell Miller, Jr., 13A Indiana Practice § 901.200 (3d ed.2007). Lopez's evidence demonstrates Labor Ready produced the Conditions of Service in response to a request for documents concerning its agreement with Kenny and the document arrived in Lopez's hands unchanged.

That Kenny employees could not positively identify the Conditions of Service goes to its weight and not admissibility.[3] Kenny also argues the document could not be applicable to its agreement with Labor Ready as of October 1999 because the document is dated June 25, 2003. Lopez argued this was the day the document was faxed. The trial court could reasonably believe Lopez's argument concerning the date. There is evidence supporting a finding that the document is what Lopez

claims it is, and the trial court did not abuse its discretion by denying the motion to strike.

### 2. *Waiver of Worker's Compensation Act*

■ Lopez argues Kenny waived application of the Worker's Compensation Act in the Conditions of Service. At issue is paragraph five:

> Customer assumes and agrees to defend, indemnify and hold harmless Labor Ready from any claims and all liability, caused or alleged to have been caused by the acts or omissions, of any Labor Ready worker, including but not limited to any claims for bodily injury (including death) and loss of use of or damage to property arising out of the use or operations of Customer's owned, non-owned or leased vehicles, machinery or equipment by Labor Ready workers and from any claim of or on behalf of any worker brought under by virtue of their employment as seaman or as a member of the crew of any vessel. Without limiting the foregoing, Customer specifically assumes and agrees to defend, indemnify and hold harmless Labor Ready from any claims for bodily injury (including death) made by Customer's employees, and *Customer agrees to waive any immunity provided by Worker's Compensation or other industrial insurance laws.*

(Appellant's App. at 133) (emphasis added).

---

2. Kenny has not argued that the document is hearsay or that hearsay cannot be considered in ruling on a motion to dismiss. (*See* Appellee's App. at 25) (in response to Kenny's motion to strike, Lopez argued the Conditions of Service and affidavits could be received as evidence even if hearsay).

3. We note Brian Rosenbaum, a Kenny manager, testified the conditions were typical of the agreements they would have with staffing agencies. The designated evidence includes evidence of compliance with some of the terms: Labor Ready paid the wages, withheld taxes, and maintained Worker's Compensation insurance, and Kenny supervised Lopez and provided protective equipment.

We need not determine whether an employer may contractually waive its right to assert the Worker's Compensation Act as an employee's exclusive remedy, because we agree with Kenny that paragraph five is not applicable in this case. The phrase "Customer agrees to waive any immunity provided by Worker's Compensation" clarifies the previous sentence. In that sentence, the customer, here Kenny, agrees to indemnify Labor Ready for liability arising from the acts or omissions of Labor Ready workers. Nothing in this paragraph or in any of the conditions authorizes personal injury suits by Labor Ready employees against Kenny.[4]

Alternatively, Lopez argues Kenny is estopped from asserting his injuries fall within the Worker's Compensation Act. According to Lopez, "Kenny knowingly misrepresented its employment relationship with Labor Ready employees, including Lopez, to the employees' detriment to save on labor costs." (Appellant's Br. at 30.) However, Lopez cites no evidence in support of this argument; therefore it is waived. *See City of East Chicago v. East Chicago Second Century, Inc.*, 878 N.E.2d 358, 369 (Ind.Ct.App.2007) ("A party waives an issue where he fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *reh'g denied.*

### 3. *Employment Relationship*

The Worker's Compensation Act "provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment." *GKN*, 744 N.E.2d at 401–02; Ind.Code § 22–3–2–6. The Worker's Compensation Act does not bar a common law claim against a tortfeasor who is neither the plaintiff's employer nor a fellow employee. *GKN*, 744 N.E.2d at 402; Ind.Code § 22–3–2–13. The party challenging a trial court's jurisdiction to hear a tort claim bears the burden of proving the claim falls within the scope of the Worker's Compensation Act. *GKN*, 744 N.E.2d at 404. Therefore, Kenny bore the burden of proof and was required to demonstrate Lopez was its employee and that his injuries arose out of and in the course of employment. *Id.* at 401–02.

One of the key disputed issues is whether Lopez was compensated for his travel time. Kenny asserts Lopez was being paid while riding the van back to Kenny's plant, citing the deposition of Brian Rosenbaum, a division manager for Kenny. Rosenbaum did not testify the return trip was compensated, but that Labor Ready employees would be "compensated the same way" as Kenny employees. (Appellant's App. at 410.) Kristopher Blouir, a Kenny employee who worked the same shift as Lopez, testified that travel time to

---

4. Lopez also argues that paragraph one, which provides "Labor Ready shall be responsible for the payment of all wages," (Appellant's App. at 133), is a clear contractual agreement that Lopez would be an employee only of Labor Ready. However, where a worker has two employers, it is common for one employer to take responsibility for paying the worker's wages. *Wishard Memorial Hosp. v. Kerr*, 846 N.E.2d 1083, 1089 (Ind.Ct.App. 2006).

Paragraph three provides, "Customer agrees that it will not, without the prior written consent of Labor Ready, utilize Labor Ready workers … in maritime work upon the navigable waters of the United States which might be subject to the … Jones Act." (Appellant's App. at 133.) Lopez argues this language was included "to ensure that its customers would not use Labor Ready employees in positions that would forfeit Labor Ready's ability to avail itself of the protections afforded by the Worker's Compensation Act." (Appellant's Br. at 27.) Lopez's argument does not explain how Labor Ready's desire to avoid liability under the Jones Act demonstrates an agreement that he would be an employee only of Labor Ready.

the generating plant was compensated, but the return trip "was just a free ride." (*Id.* at 52.)

Other evidence suggests Lopez was not paid for travel time to or from the generating plant. Ted Choucalas, a manager at Kenny, testified that "billable time" ran from the time Labor Ready workers arrived at the generating plant to the time they left the generating plant. (*Id.* at 141–42.) Further, it is undisputed that the shifts for the NIPSCO job were ten to twelve hours, but Lopez was compensated for nine hours. Blouir estimated that the trip from Kenny's plant to the generating plant took an hour and fifteen minutes to an hour and twenty minutes.

There is no evidence Lopez was being compensated for the trip back to Kenny's plant. As Kenny bore the burden of proof, we must resolve that fact against Kenny. *See GKN,* 744 N.E.2d at 404. Lopez argues that because his shift had ended and he was not being compensated at the time of the accident, any employment relationship with Kenny had ceased and he was an employee only of Labor Ready. Kenny, however, argues Lopez was a dual employee of Labor Ready and Kenny.

The Worker's Compensation Act "contemplates that one worker may simultaneously have two employers." *GKN,* 744 N.E.2d at 402; Ind.Code § 22-3-3-31. To determine whether an employer-employee relationship exists, we weigh seven factors:

(1) right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employ-

ment; and, (7) establishment of the work boundaries.

*GKN,* 744 N.E.2d at 402. "[T]he factors must be weighed against each other as a part of a balancing test as opposed to a mathematical formula where the majority wins." *Id.* The greatest weight should be given to the right of control. *Id.*

Lopez argues his "relationship with Kenny must be analyzed **at the time of the accident,** not earlier that day or at some other time." (Appellant's Br. at 13) (emphasis in original). In support, he cites *Wishard Memorial Hospital v. Kerr,* 846 N.E.2d 1083 (Ind.Ct.App.2006). Kerr was a nurse employed by a temporary staffing agency, and she was assigned to work at Wishard. One day as she was departing Wishard after completing her shift, Kerr slipped and fell. Kerr sued Wishard, and Wishard argued Kerr was its employee. On appeal, we framed the issue as "whether the trial court properly concluded that Wishard did not employ Kerr at the time of her injury." *Id.* at 1086.

Nevertheless, *Wishard* did not establish the bright-line rule Lopez advocates.[5] In analyzing the seven factors, we did not limit ourselves to the facts existing at the moment of the accident. For example, we did not consider whether Kerr was being paid or was using Wishard's equipment at the moment she fell. We considered whether Wishard controlled the manner in which she completed her work rather than whether it controlled the manner in which she exited Wishard's facilities. We considered the fact that all her work had been done on Wishard's facilities, although her shift had been completed.

That Lopez was uncompensated and taking an optional ride in a company van

---

5. Nor does *Jennings v. St. Vincent Hosp. & Health Care Center,* 832 N.E.2d 1044 (Ind.Ct. App.2006), *reh'g denied, trans. denied,* on which Lopez also relies, establish that rule. Furthermore, it is not factually analogous, as Jennings was injured during his shift.

when he was injured relates more to the issue of whether his injuries arose out of and in the course of his employment. Accordingly, we will first determine whether Lopez was a Kenny employee, evaluating all the facts of his shift with Kenny under the seven-factor test.

## A. *Right to discharge*

Kenny could not control whether Lopez would remain employed with Labor Ready. However, Kenny had the right to remove Lopez from the job if he did not perform satisfactorily. This indirect right to discharge has been held to weigh in favor of finding dual employment. However, we have also noted that independent contractor arrangements may also allow the hiring company to discharge a worker who was not performing satisfactorily. *Wishard*, 846 N.E.2d at 1089; *Jennings v. St. Vincent Hosp. & Health Care Center*, 832 N.E.2d 1044, 1052 (Ind.Ct.App.2005), reh'g denied, trans. denied. Therefore, this factor weighs only slightly in favor of finding dual employment.

## B. *Mode of Payment*

Kenny did not pay any wages directly to Lopez. Labor Ready billed Kenny, kept a portion for itself, withheld taxes, and paid the remainder to Lopez. This factor weighs against finding dual employment. However, this factor is generally given little weight, because even in a dual employment context, it is typical for employees to receive payment from only one employer. *Wishard*, 846 N.E.2d at 1089; *Jennings*, 832 N.E.2d at 1051.

## C. *Tools and Equipment*

It is undisputed that Kenny provided protective gear and industrial cleaning equipment to Lopez during his shift. Kenny provided mandatory transportation to the generating plant. Although the return trip in the van was optional, Lopez accepted the ride.

Lopez argues this factor should be accorded little weight because "the nature of Lopez's position with Labor Ready would not allow him to bring his own equipment to each job site because his responsibilities varied each day." (Appellant's Br. at 17.) Lopez relies on *Wishard*, which gave this factor little weight because "it is difficult to conceive that a nurse, as opposed to the hospital where he or she was working, would provide such materials." 846 N.E.2d at 1089. Although it would not be feasible for Lopez to supply his own industrial cleaning equipment, Kenny also provided hard hats, glasses, and transportation, which could have been supplied by workers.[6] Therefore, this factor weighs in favor of dual employment.

## D. *Belief of the Parties* [7]

Lopez identifies several ways in which he believes he was treated differently from Kenny employees, such as rate of pay and the availability of benefits.[8] Rather than indicating that Lopez was not a Kenny employee, they indicate he was not a union member. According to Rosenbaum, Ken-

---

**6.** To the extent Lopez was not permitted to supply his own tools and equipment, that tends to show Kenny exercised control over Lopez.

**7.** There is no direct evidence of Lopez's belief, as he is unable to remember the events leading up to the accident. (*See* Appellant's App. at 399.)

**8.** Lopez also argues Kenny employees were required to return in the van, but Labor Ready workers were not. Lopez's counsel so argues, (Tr. at 25), but the record does not support that contention.

ny regards any temporary worker as a probationary employee, who would be eligible for union membership after working a specified number of days. There is no indication Lopez was treated differently from any other newly-hired worker.

Although Kenny was willing to treat Lopez as a probationary employee, there was no indication Lopez was likely to complete the probationary period. Rosenbaum did not know whether the probationary period was thirty or 120 workdays, or whether those days had to be completed within a certain timeframe. Kenny could request particular workers, but no Kenny employee testified that Kenny intended to request Lopez in the future. Moreover, Kenny could not hire temporary workers at all unless there were no union workers to do the job. Even if Kenny requested Lopez, his assignments were ultimately determined by Labor Ready. Lopez's assignments changed frequently while he was employed by Labor Ready, with the majority of his assignments lasting one to three workdays. Kenny is a union shop, but there is scant evidence that Lopez was progressing toward union membership. Therefore, this factor weighs against finding dual employment.

### E. Control

Kenny exercised control over the manner in which Lopez completed his work. Kenny required Lopez to ride to the workplace in its van. Kenny selected the driver and the route to be taken by the driver. Kenny provided protective gear and required Lopez to wear it. Kenny provided the cleaning equipment and supervised his use of the equipment. Lopez was not required to take the van back to Kenny's plant, but he did, and he was expected to follow Kenny's rules while riding in the van. This factor favors finding dual employment.

### F. Length of Employment

Lopez worked one shift with Kenny. This factor clearly weighs against finding dual employment. Kenny argues this factor should be given little weight because Lopez was injured on the first day of work. However, as discussed in Section 4, the evidence suggests the parties did not contemplate a continuing relationship.

### G. Work Boundaries

Kenny required workers to travel to the generating plant in its vans following a route it selected. All the work was completed at the generating plant under the supervision of Kenny employees. Workers were required to check in and out at the generating plant. Lopez was not required to leave in Kenny's van, but had to receive prior authorization if he wanted to make other arrangements. Therefore, this factor weighs in favor of finding dual employment.

### H. Weighing the Factors

The right to discharge weighs slightly in Kenny's favor, and the mode of payment weighs slightly in Lopez's favor. These two factors are in equipoise. Of the remaining five factors, three of them weigh in favor of Kenny: supplying tools and equipment, control, and work boundaries. Control is the factor entitled to the most weight. *GKN*, 744 N.E.2d at 402. Therefore, we conclude the factors weigh in Kenny's favor, and Kenny met its burden of proving Lopez was its employee.

### 4. Scope and Course of Employment

Accidents occurring on the way to or from the workplace generally are not compensable because they do not arise out of and in the course of employment. *Chaney v. Roberts*, 475 N.E.2d 55, 59 (Ind.Ct.App.1985), *reh'g denied, trans.*

*denied.* "However, an exception to this rule ... is where transportation to or from work is furnished by the employer." *Id.*

In *American Coal Mining Co. v. Crenshaw,* 77 Ind.App. 644, 133 N.E. 394 (Ind. Ct.App.1921), the coal company had a contract with a railroad to provide a train from the city of Bicknell to its mine. The coal company paid a portion of the cost, and employees who wished to ride the train paid $1.25 a month. Crenshaw was injured while attempting to exit the train, and we held his injuries arose out of and in the course of his employment. *Id.* at 651–52, 133 N.E. at 396.

Therefore, the exception for transportation furnished by an employer applies even if the transportation is optional and the employee is not compensated for travel time. Lopez's reliance on *Mueller v. DaimlerChrysler Motors Corp.,* 842 N.E.2d 845 (Ind.Ct.App.2006), and *Donahue v. Youngstown Sheet & Tube Co.,* 474 N.E.2d 1013 (Ind.1985), is misplaced, as the employees in those cases were injured while crossing the street on the way to or from the place where they parked their own vehicles. Thus, those cases fit under the general rule rather than the exception for employer-provided transportation. Pursuant to *American Coal Mining* and *Chaney,* Lopez's injuries arose out of and in the course of his employment. Therefore, the trial court did not err by concluding the Worker's Compensation Act applies and dismissing the case.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.