## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 25 2015, 9:57 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

John B. Steinhart
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Clay Howard,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 25, 2015

Court of Appeals Case No. 48A02-1406-CR-384

Appeal from the Madison Circuit Court.
The Honorable Thomas Newman, Jr., Judge.
Cause No. 48D03-1012-MR-893

**Baker, Judge.**

[1] Clay Howard appeals his conviction for Murder,[1] a felony. Howard contends that the trial court erroneously (1) permitted the State to amend the charging information at trial; (2) permitted the jury to view the crime scene, which was his prison cell; (3) admitted into evidence a letter allegedly written by Howard; and (4) permitted the jury to view Howard's Aryan Brotherhood gang tattoo. Finding no error, we affirm.

## Facts

[2] In April 2007, Howard was an inmate at the Pendleton Correctional Facility. On April 5, 2007, Howard was transferred into cell 103 in Building D, where inmates live two to a cell with individual doors on each cell. Howard's new cellmate was Kent McDonald, a convicted child molester.

[3] On the night of April 5, 2007, two inmates played dominos with McDonald and later heard McDonald and Howard arguing around 11:30 p.m. On the morning of April 6, 2007, a correctional officer doing a body count observed Howard on the top bunk and McDonald lying under the covers on the lower bunk with his legs sticking up at an unusual angle. Although McDonald had never previously missed a meal, he missed breakfast that morning. Two inmates later came to see if McDonald wanted to join them for lunch and talked with Howard, who was "shaking" and appeared "afraid." Tr. p. 518.

---

[1] Ind. Code § 35-42-1-1.

Howard blocked the door so that they could not see into the cell and told them that McDonald was sleeping.

[4] Shortly after noon on April 6, correctional officers found McDonald lying on the bottom bunk, with his legs still in the unusual position they had been in earlier that morning. McDonald's leg was cold to the touch, and when his blankets were removed, the officers discovered that he had a pillowcase tied around his head and observed a substantial amount of blood. He was not breathing, and medical personnel were unable to resuscitate him. Later, a pathologist conducting an autopsy observed that McDonald had multiple blunt force injuries to the head and neck, with evidence of asphyxiation.

[5] In December 2010, the State charged Howard with McDonald's murder, alleging that Howard, "acting in concert with Paul M. Rayle, did knowingly kill" McDonald. Appellant's App. p. 266. Howard's jury trial took place from February 18 through 26, 2014. At the beginning of trial, the State filed an amended information omitting the phrase "acting in concert with Paul M. Rayle." *Id.* at 263. Howard objected that the amendment was untimely but the trial court overruled the objection, finding that the amendment was not substantive because it merely removed a surplusage of language.

[6] During the trial, the State requested that the jury view the cell where the murder took place. The trial court allowed the jury to view the crime scene over Howard's objection, finding that it was "beneficial" to the jury to view the scene. Tr. p. 274.

[7]    At trial, the State introduced a letter into evidence. The State alleged that approximately one year after McDonald's murder, a corrections officer screening outgoing mail observed a letter from Howard to his father. The screening officer placed the letter in a secured box for further review. The letter was later retrieved by a Department of Correction (DOC) investigator and sent to Indiana State Police officers. In relevant part, the letter stated as follows:

> I still go hunting. Just not your typical Game though. Tell Shane I Bagged and Tagged a [illegible]. It's got a gamey taste but a lot like Beef. They tried to get me on Poaching charges because the Son Bitch wasn't in season. The charges never stuck. That was 2 Birds w/one stone not only did he Play with kids, he Played with Boys so he was a F*g. How about that for earning some stripes. Thats something you can be Proud of. *Throw this letter in the Fire Place or Burn it non-the less when your done reading it. Serious.*

Ex. 33 (grammatical and spelling errors original; emphasis original). Howard objected that the State had failed to establish a sufficient chain of custody to introduce the letter into evidence. The trial court overruled the objection and admitted the letter into evidence.

[8]    At trial, inmate Toby Hicks testified that Howard admitted to him that he had discovered that his cellmate was a child molester and that he was ordered by the prison gang Aryan Brotherhood to "take care of it." Tr. p. 636. Howard told Hicks that he was in the process of joining the gang at that time. According to Hicks, Howard said that he had attempted to extort money from McDonald and McDonald refused to pay, after which Howard and another gang member "beat him and tortured him and left him in his bed and went to chow." *Id.* at

637. Howard stated that they "choked him out" until he passed out and then "put him on the bed and left him there." *Id.* at 639.

[9] The State sought to enter pictures of Howard's Aryan Brotherhood tattoo into evidence. Howard objected because the photographs had not been disclosed to him prior to trial. The trial court granted the objection in part, denying the State's request to admit the photographs into evidence and instead ordering Howard to show his tattoo to the jury. The trial court reasoned that the State had laid a sufficient foundation by presenting Hicks's testimony regarding Howard's membership in the Aryan Brotherhood gang. A DOC investigator who monitors prison gang activity testified regarding gang activity in Indiana prisons and the Aryan Brotherhood tattoo, and then identified Howard's chest tattoo as an Aryan Brotherhood gang tattoo. The investigator also testified that the Aryan Brotherhood requires an act of violence to earn admission into the gang and that this particular gang is known for targeting and extorting child molesters.

[10] At the close of trial, the jury found Howard guilty as charged. On May 5, 2014, the trial court sentenced Howard to sixty-five years imprisonment. Howard now appeals.

## Discussion and Decision

## I. Amendment of Charging Information

[11] Howard first argues that the trial court erred by permitting the State to amend the charging information at the start of the trial. We review a trial court's

decision to allow a late amendment to a charging information for an abuse of discretion. *Brown v. State*, 912 N.E.2d 881, 892 (Ind. Ct. App. 2009). Whether an amendment is of form or substance is a question of law that is reviewed de novo. *Gibbs v. State*, 952 N.E.2d 214, 221 (Ind. Ct. App. 2011).

[12] Amendments of substance must be filed before trial begins, while amendments of form may be made at any time. Ind. Code § 35-34-1-5. The relevant statute lists examples of "immaterial defect[s]" in a charging information that may be amended "at any time":

> (1) any miswriting, misspelling, or grammatical error;
> (2) any misjoinder of parties defendant or offenses charged;
> (3) the presence of any unnecessary repugnant allegation;
> (4) the failure to negate any exception, excuse, or provision contained in the statute defining the offense;
> (5) the use of alternative or disjunctive allegations as to the acts, means, intents, or results charged;
> (6) any mistake in the name of the court or county in the title of the action, or the statutory provision alleged to have been violated;
> (7) the failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense;
> (8) the failure to state an amount of value or price of any matter where that value or price is not of the essence of the offense; or
> (9) any other defect which does not prejudice the substantial rights of the defendant.

I.C. § 35-34-1-5(a).

[13] To prove Howard guilty of murder, the State was merely required to prove that he knowingly or intentionally killed Howard. I.C. § 35-42-1-1. The additional

language that he had acted "in concert with Paul M. Rayle" involved both unnecessary language and a misjoinder of another individual. Appellant's App. p. 266. Facts that may be omitted from a charging information without affecting the sufficiency of the charge are mere surplusage. *Jones v. State*, 938 N.E.2d 1248, 1252 (Ind. Ct. App. 2010); *see also Erkins v. State*, 13 N.E.3d 400, 406 (Ind. 2014) (finding no error where trial court permitted amendment to charging information on the second day of trial to change the allegation of which co-conspirator committed the alleged act because the changed language was "not essential to making a valid conspiracy charge").

[14] Howard argues that this change caused a "complete shift" in the way the crime was to be tried. Appellant's Br. p. 18. We disagree. The substance of the omitted language related to Howard's membership in the Aryan Brotherhood gang and the fact that he committed the crime with another gang member to gain full membership in the gang. All of that evidence was presented to the jury via Hicks's testimony. Therefore, the change in the charging information did not, in fact, substantively change the way the State tried its case. We find that the language in question here was mere surplusage, that the amendment was one of form rather than substance, and that the trial court did not abuse its discretion by permitting the State to amend its charging information at the beginning of trial.

# II. Jury Viewing of the Crime Scene

Next, Howard argues that the trial court abused its discretion in permitting the jury to view the crime scene, which happened to be his prison cell. It is well established that a jury may view the place in which any material fact of the crime occurred. Ind. Code § 35-37-2-5. Whether to allow the jury view is within the trial court's sound discretion, and we will reverse only if the trial court abused that discretion. *Jackson v. State*, 597 N.E.2d 950, 962 (Ind. 1992).

Howard emphasizes that in this case, there was both photographic and videographic evidence of the prison cell at issue. He argues, therefore, that it was unnecessary for the jury to view the cell in person. The trial court disagreed, finding that "it would be beneficial to the jury to allow the view" of the cell. Tr. p. 274.

Initially, we note that there is no case law supporting a proposition that if there is photographic and/or videographic evidence available that a trial court should not permit a jury view. Furthermore, we note that much of the State's evidence in this case was circumstantial, placing special importance on the layout of the cell. Specifically, evidence related to the following was presented to the jury: whether inmates could hear McDonald inside of the cell before the killing; whether Howard could have blocked the door in a way that limited the view of the body; and, whether the guards were able to view the scene from the control room or during their inspection rounds. Given the questions before the jury

and the relevance of the layout of the prison cell, we do not find that the trial court abused its discretion in permitting the jury view.[2]

## III. Admission of Evidence

[18] Finally, Howard argues that the trial court erred by admitting certain evidence proffered by the State. Specifically, he contends that the trial court should not have admitted the letter allegedly written by Howard or required him to show his gang tattoo to the jury. The decision to admit evidence is within the trial court's sound discretion, and an abuse of discretion occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009).

## A. Letter

[19] Howard argues that the trial court abused its discretion by admitting the letter allegedly written by him to his father. At trial, Howard objected that the State had failed to establish a sufficient chain of custody of the letter: "I don't believe we have proper complete chain-of-custody as to how [the letter] got into that

---

[2] Howard also argues that the jury view was impermissible because it reminded the jurors that he was an inmate. He did not object on this basis at trial and has therefore waived it for appeal. Regardless, the jury was acutely aware that Howard was an inmate, based on the testimony of nearly every witness as well as the photographic and videographic evidence. We agree with the State that the protections in place to ensure a defendant is not unfairly viewed as dangerous are qualitatively different than shielding a jury from observing a crime scene that happens to be in a prison. Therefore, even if the objection had been raised, it would have been properly overruled.

box." Tr. p. 327. The State offered the following evidence with respect to the chain of custody of the letter:

- Daniel Harrison was a correctional officer at Pendleton at the relevant time. Among his duties was screening outgoing inmate mail, which was not permitted to be sealed. He noticed a sealed letter that was addressed to Norman Howard, Jr., with a return address from Clay Howard. He unsealed the letter, read it, and placed it in a box for further investigation by internal affairs.

- Michael Raines was a DOC investigator. He retrieved the letter from the box in which Howard had placed it. The box was locked and only DOC employees were able to access it. Raines notified Indiana State Police Detective Robert May about the letter.

- Detective May picked up the letter from Raines and placed it in evidence storage at the Indiana State Police Post. The letter remained in evidence storage until Detective May picked it up the day before he testified and brought it to court with him. It was in his possession the entire time between pickup from storage and bringing it to court.

[20] It is well settled that the requirement that chain of custody be established

> is an attempt to satisfy the goal of assuring the trial court that the evidence submitted has not been substituted or tampered with. While the State is not required to exclude every possibility of tampering, the chain of custody must give reasonable assurances that the property passed through the hands of parties in an undisturbed condition.

*Johnson v. State*, 580 N.E.2d 670, 671-72 (Ind. 1991). Any gaps in the chain of custody go to the weight of the evidence rather than its admissibility, and there is a presumption of regularity in the handling of exhibits by public officials. *Culver v. State*, 727 N.E.2d 1062, 1067 (Ind. 2000); *Filice v. State*, 886 N.E.2d 24, 34 (Ind. Ct. App. 2008). We find that the State adequately established the chain of custody of the letter.

[21]     Moreover, as the trial court observed, the letter is a nonfungible, readily identifiable item. In such a case, establishing a chain of custody is not necessary if a witness with knowledge of the item identifies it in court. *Rice ex rel. Lopez v. Harper*, 892 N.E.2d 209, 214 (Ind. Ct. App. 2008). Here, all of the witnesses who testified about the letter, including Harrison, who first retrieved it, recognized and identified it as the letter in question. Consequently, even if the chain of custody had been faulty, it would have been of no moment.

[22]     On appeal, Howard attempts to fold in a new argument that he did not make to the trial court, which is not permitted. Specifically, he now raises authentication questions, complaining that Howard's handwriting was not identified and that there was no testimony that Harrison had actually observed Howard creating the document.[3] Inasmuch as he did not raise this argument to the trial court, it is waived. Furthermore, given that the envelope in which the letter was sealed was addressed to Howard's father and bore a return address listing Howard, with his DOC number, as the author, authentication or identification beyond the testimony provided by Harrison was not necessary. We find that the trial court did not abuse its discretion by admitting the letter into evidence.

---

[3] Howard complains that there was no testimony about how Harrison collected the letter or how he knew it was written by Howard. This argument goes to the weight rather than the admissibility of this evidence, and these questions could have been raised to Harrison on cross-examination but were not. It is too late now to raise these issues. We also note that while Howard baldly states that he was prejudiced by the admission of this letter into evidence, he in no way expounds upon this assertion to explain *why* it was prejudicial.

# B. Tattoo

[23] Finally, Howard argues that the trial court erred by admitting evidence of his Aryan Brotherhood tattoo and requiring that he show the tattoo to the jury.[4]

[24] First, Howard argues that the evidence is inadmissible because "the state conducted a physical examination of Howard without notifying his counsel . . . during the course of litigating this matter," thereby violating his constitutional rights. Appellant's Br. p. 21. Howard offers no evidence whatsoever that any physical examination occurred "during the course of this litigation" or at any other time when presence of counsel would have been required. And indeed, it can reasonably be assumed that a DOC inmate is frequently subjected to physical examinations and that the State, through DOC, had knowledge of his tattoo as a result. Consequently, we find no error on this basis.

[25] Next, Howard contends that evidence of his tattoo should not have been admitted because the State failed to lay an adequate foundation. Specifically, he argues that "[n]o evidence was presented as to when it was obtained or how it was specifically tied to the crime at hand[.]" *Id.* at 23. We disagree, inasmuch as inmate Hicks's testimony specifically tied the Aryan Brotherhood tattoo to the crime at hand. Hicks testified that Howard had joined the gang

---

[4] To the extent that Howard premises his argument on the State's failure to produce the photographs of the tattoo to his attorney within discovery deadlines, we note that the photographs themselves were not admitted into evidence. The only evidence that was admitted was evidence of which Howard had direct, personal knowledge: his own tattoo. Consequently, no error can be found in this regard.

and committed the murder at the direction of the gang. Therefore, a tattoo tending to establish that he was, in fact, a member of the gang, relates directly to some of the most damning evidence of the crime. As to the date on which the tattoo was obtained, we find that such information goes to the weight of the evidence rather than its admissibility. Howard's counsel was free to highlight to the jury that the State did not know the date on which he had gotten the tattoo. But the absence of that information does not render the evidence inadmissible.

[26] Finally, Howard contends that the probative value of the evidence of his tattoo was substantially outweighed by its prejudicial effect. *See* Ind. Evidence Rule 403. We acknowledge that the act of raising his shirt and showing the tattoo to the jury had a prejudicial effect. But we find that the probative value of this evidence readily outweighed that prejudice. As noted above, Howard's membership in the Aryan Brotherhood gang was directly relevant to the State's theory of the case, and directly tied to Hicks's testimony regarding Howard's confession. Given the direct relevance to the matters at hand, we find that the trial court did not abuse its discretion by admitting evidence of Howard's tattoo or requiring that he show it to the jury. *See Robinson v. State*, 682 N.E.2d 806, 809-10 (Ind. Ct. App. 1997) (affirming trial court's decision to require defendant to show gang tattoo to jury because, while "evidence of gang membership may contain some inherent prejudice, prejudice alone is not sufficient to render [the] evidence inadmissible").

The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.